[No. 57273-9.   En Banc.   October 24, 1991.]

EMPLOYCO PERSONNEL SERVICES, INC., ET AL, *Respon-
dents,* v. THE CITY OF SEATTLE, *Appellant,*
GRANCO CONSTRUCTION, INC.,
ET AL, *Respondents.*

*Mark H. Sidran, City Attorney,* and *Brian Faller, Assistant,* for appellant.

*Davis Wright Tremaine,* by *Michael J. Murphy, Stephen M. Rummage,* and *Suzanne M. DuRard; Helsell, Fetterman, Martin, Todd & Hokanson,* by *Andrew J. Kinstler,* for respondent Employco Personnel Services, et al.

*Preston Niemi,* for respondent Granco Construction.

*Carney, Stephenson, Badley, Smith & Spellman, P.S.,* by *R. Jack Stephenson* and *James E. Lobsenz,* for respondent Clise Agency.

*Carol A. Wardell* and *Julie A. Anderson* on behalf of Chelan County Public Utility District; *David A. Bricklin* on behalf of Snohomish, Franklin, Mason, Benton, Grays Harbor, and Okanogan County Public Utility Districts, amici curiae for appellant.

*S. Leigh Fulwood, Mark Roellig,* and *Richard A. Finnigan* on behalf of GTE-Northwest Inc., USWest Communications, and Washington Independent Telephone Association, amici curiae for appellant.

SMITH, J. — This is an appeal by the City of Seattle upon direct review from a partial summary judgment in favor of several Seattle businesses in a class action brought in the King County Superior Court by those businesses for damages arising from a power outage which they contend was proximately caused by the negligence of the City and Granco Construction. The appeal asks this court to interpret a section of the Seattle Municipal Code which states that the Seattle City Light Department "shall not be liable for any loss, injury, or damage resulting from the interruption . . . of electric service from any cause . . .". The trial court ruled that the ordinance does not provide the City immunity from liability under the facts of this case.

We agree with the trial court and affirm its judgment.

This case arises out of a power outage in Seattle which occurred from August 31, 1988, to September 3, 1988, when an underground fire damaged or destroyed several major electrical feeder cables. It affected an approximately 38-block area north of downtown Seattle. As a consequence, several businesses, respondents here,[1] brought this class action against the City of Seattle (City) and against Granco Construction, Inc. (Granco). The suit claimed that the City violated RCW 19.122.030 by failing to fulfill its statutory obligation to locate underground electric utility facilities upon request, and that the City was liable for the damages caused by its failure to meet that statutory obligation. Respondents also claimed that the City was liable

---

[1]Employco Personnel Services, Inc., Tempura and Teriyaki, Bergman Luggage Company, Inc., L'Oustau, Inc., Market Place Center, Ltd., and Sound Resources, Inc. Granco Construction, Inc., a defendant in the trial court, joined as a respondent on this appeal. The Clise Agency, Inc., is also a respondent on this appeal. Plaintiffs Bon Marche, Seattle Westin Hotel Company, Steve's Broiler, Inc., Western Stone and Metal Corp., Relph and Panser, Inc., and Ogden Murphy Wallace were consolidated as parties in the trial court. They chose not to participate in this appeal.

for negligence in failing to use reasonable care to locate and identify its own underground electric facilities. Further, respondents claimed that the City breached its contractual obligation to supply electricity to them.

Appellant City maintains and operates the electric public utility which serves the City of Seattle and is commonly known as Seattle City Light.

Respondent Granco Construction, Inc., is a Washington corporation engaged in the construction business. On August 31, 1988, it was driving steel piles into the ground and drove through the center of two electrical conduits in the duct crossing Virginia Street to the Securities Building in downtown Seattle. This resulted in an underground fire that damaged or destroyed several major electrical feeder cables serving properties operated by businesses in the area.

Respondents Employco Personnel Services, Inc., Tempura and Teriyaki, Bergman Luggage Company, Inc., L'Oustau, Inc., Market Place Center, Ltd., and Sound Resources, Inc., are businesses operating in downtown Seattle whose electric service was interrupted by the power outage.

Respondent Clise Agency, Inc. (Clise) owns and manages the Securities Building at Fourth Avenue and Virginia Street in downtown Seattle. The sidewalk on the Virginia Street side of the building was in need of repair and Clise earlier hired Granco to repair and replace it. When Clise hired Granco, the repair plan included sinking steel pilings as support for a new walkway. A design plan for the project, by Lance Herlocker & Associates, showed an underground conduit of some type running perpendicular to Virginia Street and across the sidewalk next to the Securities Building, although the conduit was not in the area initially intended for repair.

On August 12, 1988, Granco submitted a "locate request" to the 1-number locator service at Seattle City Light requesting the location of underground facilities on

the south side of Virginia Street alongside the Securities Building. The request stated that Granco intended to drive steel piles underground.

On August 15, 1988, City Light completed its location service in the requested area and marked "no electrical" in the construction area and on the Underground Locate Report form furnished to Granco.

On August 22, 1988, Granco made a second "locate request" to City Light because of expansion of the project site. The second request asked for locate service for the 60 feet east of the previously requested area. It also referred to the prior request submitted by Granco. A third "locate request" was made on August 23, 1988.

On August 24, 1988, City Light completed its second location work in the requested area. The City's locator crew marked an electrical line for a streetlight running through the sidewalk parallel to the south side of Virginia Street from the alley to Fourth Avenue. No other underground facilities were marked by the locator crew.

On August 26, 1988, City Light completed its third and final location in the requested area. The City Light crew marked "no E" for "no electric" on its Underground Locate Report form.

The map of underground facilities used by City Light's locator crew showed that an underground duct ran from a "manhole" on the north side of Virginia Street across the street from the Securities Building within the area in which Granco was to drive piles. That duct, however, was not marked by the City Light locator crews.

Since 1980, Seattle's electric rate ordinance has provided that "[t]he [City Light] Department shall not be liable for any loss, injury, or damage resulting from the interruption, restoration, or reduction of electric service from any

cause . . .".[2] Respondents in their lawsuit asked for declaratory relief, seeking a judicial determination that the ordinance did not confer upon the City immunity from liability.

Granco Construction then filed a third party complaint against the Clise Agency, alleging that Clise was negligent in failing to inform Granco of the location of underground electric facilities that might be endangered by their sidewalk repair project. In response, Clise filed a counterclaim against Granco and a cross claim against the City of Seattle, seeking contribution and indemnity from Granco and the City. The City of Seattle filed a cross claim against the Clise Agency.

The City moved to dismiss the respondents' complaint, pursuant to CR 12(b)(6), for failure to state a claim. For purposes of that motion, the City assumed the truth of all of respondents' allegations. The respondents cross-moved for partial summary judgment against the City, and the Clise Agency joined in that motion.

On May 10, 1990, the Honorable Terrence A. Carroll, King County Superior Court, entered an order denying the City's motion to dismiss and granting respondents' motion for partial summary judgment. The order recites, in part:

> Sections 21.49.110(M & N) (1988)[3] of the Seattle Municipal Code and the provisions of any contracts with the plaintiffs incorporating those sections do not confer immunity

---

[2]Seattle Municipal Code (SMC) 21.49.110(S). This ordinance was originally enacted as ordinance 109218 on July 21, 1980, and subsequently reenacted in 1982, 1984, 1985, 1986 and 1989. The 1986 version was in effect at the time of the power outage on August 31, 1988. Throughout the proceedings and in the trial court's order, the ordinance was cited as SMC 21.49.110(M and N) or SMC 21.49.110(N). Distinctions in the different subsection references are immaterial since the texts of current subsection (S) and former subsection (N) are identical.

[3]See footnote 2.

upon the City from liability for its own negligence, whether ordinary, reckless or gross, nor from liability for its breaches of the statutory, contractual and/or common-law duties alleged in this action. Further, even if the referenced sections of the Seattle Municipal Code and the provisions of any contracts with plaintiffs incorporating those sections are construed to apply to the claims alleged in this action, they would be invalid and unenforceable. The referenced ordinances and contractual provisions do not provide the City with immunity from liability under the facts alleged in plaintiffs' complaint.

The court further declared that the partial summary judgment constituted a final judgment under CR 54(b), thus permitting an expedited appeal. The City of Seattle timely filed this appeal from the partial summary judgment.

The question presented by this case is whether the Seattle electric rate ordinance, SMC 21.49.110(S), confers upon the City immunity from liability for negligence; and, if so, whether the ordinance is invalid because it contravenes public policy or state statutes.

Appellant makes three arguments. *First*, it argues that Seattle's ordinance provision limiting liability for power interruptions is just and reasonable. *Second*, it argues that the limitation on liability clearly applies to damages from power interruptions which allegedly resulted from the City's negligence. *Third*, it argues that Seattle's limitation on liability is not preempted by any Washington statutes.

Public Utility District No. 1 of Chelan County, in a brief amicus curiae, argued that the Underground Utilities Act (RCW 19.122) does not create an independent cause of action for third parties and that the summary judgment of the trial court should be reversed.

A brief amicus curiae was filed on behalf of seven public utility districts: the Snohomish County Public Utility District No. 1, the Franklin County Public Utility District No. 1, the Mason County Public Utility Districts Nos. 1 and 3, the Benton County Public Utility District No. 1, the Grays Harbor Public Utility District No. 1 and the Okanogan Public Utility District No. 1. Those utility districts con-

tended that an electric utility owes no common law duty to its customers to protect them from harm by excavators; that utilities have authority to adopt clauses exculpating them from liability for negligence; that RCW 19.122 does not create a duty for the benefit of third party electric customers; and that the attack on former SMC 21.49-.110(N) is precluded by the doctrine of laches.

GTE-Northwest Incorporated, USWest Communications, Incorporated and the Washington Independent Telephone Association filed a brief amicus curiae. They conclude that RCW 80.04.440 merely preserves rights that existed at common law and does not create a new cause of action or remedy; that RCW 19.122 does not create a new remedy or cause of action; and that public policy reasons support limitations on liability and damages.

The arguments of amicus curiae are consistent with the arguments advanced by the parties whom they favor.

# I
## JUST AND REASONABLE

While the City contends that the ordinance is "just and reasonable", respondents argue that it is contrary to public policy. The City asserts that under RCW 80.28.010[4] it can enact "just and reasonable" rules and regulations.

The Seattle ordinance, SMC 21.49.110(S), speaks for itself. It is not necessary for us to analyze the concept of "just and reasonable" in its implementation.

---

[4]RCW 80.04.440 (companies liable for damages):

"In case any public service company shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done, either by any law of this state, by this title or by any order or rule of the commission, such public service company shall be liable to the persons or corporations affected thereby for all loss, damage or injury caused thereby or resulting therefrom, and in case of recovery if the court shall find that such act or omission was wilful, it may, in its discretion, fix a reasonable counsel or attorney's fee, which shall be taxed and collected as part of the costs in the case. An action to recover for such loss, damage or injury may be brought in any court of competent jurisdiction by any person or corporation."

## II
### LIMITATION ON LIABILITY

Seattle Municipal Code 21.49.110(S) states that:

The Department shall not be liable for any loss, injury, or damage resulting from the interruption, restoration, or reduction of electric service from *any cause*, including but not limited to failure of generation and distribution systems, inadequacy of energy supply, implementation of emergency plans, or temporary disconnections for repairs and maintenance or failure to pay for service rendered. During an emergency declared by appropriate civil authority, the Department may curtail electric service.

(Italics ours.)

■ In determining whether the City can confer immunity upon itself in light of RCW 80.04.440 and RCW 80.28.010(7), we look to the rule that statutes must be read together to determine legislative purpose to achieve a "harmonious total statutory scheme . . . which maintains the integrity of the respective statutes."[5]

RCW 80.04.440 holds utilities liable "to the persons or corporations affected thereby for all loss, damage or injury" caused by the failure to do an act required by state law or commission of an act prohibited by state law. RCW 80.28-.010(7) provides that "[a]n agreement between the customer and the utility, whether oral or written, shall not waive the protections afforded under this chapter." RCW 80.28 regulates gas, electrical and water companies.

RCW 19.122 imposes upon the City the duty to mark its underground utilities and imposes liability for breach of that duty. The chapter explicitly includes "a state, a city, a county, or any subdivision or instrumentality of a state" as subject to its provision.[6] It renders them liable for any damages caused by their failure to locate and mark their underground facilities as required by the statute.[7]

■ The City of Seattle is not immune from liability. A municipality has only so much immunity as it derives from

---

[5] *State v. O'Neill*, 103 Wn.2d 853, 862, 700 P.2d 711 (1985).

[6] RCW 19.122.020(10).

[7] RCW 19.122.040(3).

the sovereign. Sovereign immunity was abolished in this state in 1963 when the Legislature declared that " '[t]he State of Washington, whether acting in its governmental or proprietary capacity, *shall be liable* for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation'."[8] The Legislature adopted a policy favoring purchase of liability insurance and enacted statutes authorizing local governments to purchase it. The State may purchase, or contract for the purchase of, property and liability insurance for any municipality upon request of the municipality.[9] Additionally, local governments may self-insure.[10] This insurance "shall include but not be limited to coverage for claims arising from the tortious or negligent conduct of the local government entity . . . or agents . . .". The Legislature in RCW 35.21.415 declined to grant immunity to cities or towns.[11] In viewing the statutory scheme as a whole, the conclusion is reached that the Legislature clearly did not intend that the City of Seattle have immunity from "any loss, injury, or damage resulting from the interruption . . . of electric service from any cause",[12] as stated in the Seattle ordinance.

■ A municipality may be held liable for injuries to property belonging to another.[13] It is firmly established that in a proper case a city may be held liable on the

---

[8]*Kelso v. Tacoma*, 63 Wn.2d 913, 918, 390 P.2d 2 (1964); Laws of 1963, ch. 159, § 2.

[9]RCW 43.19.1936.

[10]RCW 48.62.040.

[11]RCW 35.21.415 states that:
"Officials and employees of cities and towns shall be immune from civil liability for mistakes and errors of judgment in the good faith performance of acts within the scope of their official duties involving the exercise of judgment and discretion which relate solely to their responsibilities for electrical utilities. This grant of immunity shall not be construed as modifying the liability of the city or town."

[12]SMC 21.49.110(S).

[13]18 E. McQuillin, *Municipal Corporations* § 53.09 (3d ed. 1984).

theory of negligence.[14] A city may be held liable for either a negligent act of commission or a negligent act of omission.[15] A city's negligence need not be the sole cause of an injury, but if its negligence concurs with that of another to produce a wrong, both of the tortfeasors may be held liable.[16]

## III
### PREEMPTION OF SMC 21.49.110

The City contends that it relied on the authority of RCW 35.92.050[17] when it enacted SMC 21.49.110. That statute allows the City "to regulate and control the use, distribution, and price [of electricity]." The City asserts that the ordinance adopted in 1980, on its face, insulates it from damages for electrical interruption from any cause.

The City argues that the phrase "from any cause" in the ordinance includes power loss or interruption caused by City Light's own acts of negligence. The phrase "from any cause" is followed by examples of causes the City Council had in mind when it enacted the ordinance.[18] However, the City admitted that the ordinance could not be read as

---

[14]18 E. McQuillin § 53.16.

[15]18 E. McQuillin § 53.16.

[16]18 E. McQuillin § 53.16.

[17]RCW 35.92.050 (authority to acquire and operate utilities):
"A city or town may also construct, condemn and purchase, purchase, acquire, add to, alter, maintain and operate works, plants, facilities for the purpose of furnishing the city or town and its inhabitants, and any other persons, with gas, electricity, and other means of power and facilities for lighting, heating, fuel, and power purposes, public and private, with full authority to regulate and control the use, distribution, and price thereof; . . . authorize the construction of such plant or plants by others for the same purpose, and purchase gas, electricity, or power from either within or without the city or town for its own use and for the purpose of selling to its inhabitants and to other persons doing business within the city or town and regulate and control the use and price thereof."

[18]SMC 21.49.110(S) (1988).

absolving it from liability for acts of gross negligence, recklessness or intentional misconduct. It does argue, however, that the ordinance grants the City immunity from ordinary negligence.

■ ■ The City may exercise only such power as is delegated to it by the Legislature.[19] It is a general requisite to the validity of an ordinance that it conform to, and not violate, general statutes.[20] In case of conflict, the ordinance is void. Attached to "every ordinance or resolution affecting, or adopted by, a municipality, is the implied condition that the same must yield to the predominant power of the state, when that power has been exercised. . . . [W]here there is conflict between a statute and an ordinance, the latter must give way."[21] "[W]here the state . . . has . . . asserted its jurisdiction over a given subject-matter, and there is no room for concurrence, the municipal charter or ordinance must give way."[22] "[A] municipal corporation[] is limited in its powers to those necessarily or fairly implied in or incident to the powers expressly granted, and also those essential to the declared objects and purposes of the corporation. If there is a doubt as to whether the power is granted, it must be denied."[23]

■ ■ The City may enact an ordinance addressing the same subject matter as a state statute if the city ordinance does not conflict with the general laws of the state and the state law does not show on its face an intent to be

---

[19]See *Massie v. Brown*, 84 Wn.2d 490, 492, 527 P.2d 476 (1974); Trautman, *Legislative Control of Municipal Corporations in Washington*, 38 Wash. L. Rev. 743 (1963).

[20]6 E. McQuillin, *Municipal Corporations* § 21.32, at 315 (3d ed. 1988).

[21]6 E. McQuillin § 21.32, at 315.

[22]*State ex rel. Webster v. Superior Court*, 67 Wash. 37, 47, 120 P. 861 (1912).

[23](Citations omitted.) *Port of Seattle v. State Utils. & Transp. Comm'n*, 92 Wn.2d 789, 794-95, 597 P.2d 383 (1979). *See* 6 E. McQuillin, *Municipal Corporations* § 21.32, at 315 (3d ed. 1988); *Hite v. PUD 2*, 112 Wn.2d 456, 772 P.2d 481 (1989).

exclusive.[24] The test for determining whether a municipal ordinance conflicts with a state statute was set forth in *Bellingham v. Schampera.*[25] In that case, this court stated that "whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa . . . [is] [j]udged by [the] test . . . [of whether the] ordinance is in conflict if it forbids that which the statute permits".[26] Applying this test, the ordinance in this case is in conflict with state statutes. The City argues that the ordinance forbids suits for damages for loss of electrical service occasioned by acts of negligence. State statutes, to the contrary, authorize such suits and permit recovery of damages for negligently caused losses.[27]

The City argues that the purpose of the ordinance is to provide for setting of reasonable rates, and that the City's ability to do that is affected by the ruling of the Superior Court. The City further argues that if it has to defend itself in lawsuits like this, it raises the specter of higher rates for the average citizen. This is a specious argument which is manifestly without merit.

We affirm the decision of the trial court declaring the ordinance, SMC 21.49.110(S), invalid for the reasons that (1) it contravenes state statutes and invokes sovereign immunity; and (2) it is preempted by state statutes.

DORE, C.J., and UTTER, DOLLIVER, DURHAM, GUY, and JOHNSON, JJ., concur.

BRACHTENBACH and ANDERSEN, JJ., concur in the result.

Reconsideration denied January 15, 1992.

---

[24]*Republic v. Brown*, 97 Wn.2d 915, 919, 652 P.2d 955 (1982).

[25]57 Wn.2d 106, 356 P.2d 292, 92 A.L.R.2d 192 (1960).

[26]*Schampera*, at 111 (quoting *Struthers v. Sokol*, 108 Ohio St. 263, 140 N.E. 519 (1923); *State ex rel. Cozart v. Carran*, 133 Ohio St. 50, 11 N.E.2d 245 (1937)).

[27]*See* RCW 19.122.040; RCW 80.04.440.