[No. 45015-8-I. Division One. August 7, 2000.]

RONALD SCHULTZ, *Appellant*, v. SNOHOMISH COUNTY, *Respondent*.

---

*Bill H. Williamson* (of *Ross, Williamson, Loitz, P.L.L.C.*);
and *Shawn G. Hart*, for appellant.

*James H. Krider, Prosecuting Attorney,* and *Ruth A.R. Robinson* and *Duana T. Kolouskova, Deputies,* for respondent.

AGID, C.J. — Ronald Schultz contends that by using a two-step process not defined in the Snohomish County Code (SCC), Planning and Development Services (PDS) violated his right to receive a written decision on his short subdivision application within 30 days of its submittal under SCC 20.20.030 and effectuated a taking when it determined his application was required to provide for dedication of a public road. We conclude that the SCC does set forth a two-step process for review of short subdivision applications and agree with Snohomish County that the 30-day time period for a decision under SCC 20.20.030 does not begin until the applicant has provided all the information PDS reasonably determines is necessary to make its decision. But we agree with Schultz that PDS may not delay indefinitely the procedural step of determining and informing the applicant whether his or her application is complete for processing. Despite our conclusion that PDS violated Schultz's statutory right to that notice by failing to timely respond to his submission of additional application materials, we find no evidence in the record of damages caused by this violation and therefore affirm.

## FACTS

Ronald Schultz and Peter Poeschel, partners in a Washington general partnership called NORETEP, owned three contiguous lots in Snohomish County which they transferred individually to themselves and a third party. On March 12, 1996, Schultz filed a short subdivision application with PDS requesting a permit to divide his lot, a

21.4-acre parcel located on the east side of Hilltop Road in Marysville, into four smaller lots. In a letter sent a month later, PDS informed Schultz that his application was incomplete because it did not meet the minimum requirements of SCC chapters 20.24 (short subdivision code) and 32.10 (growth management regulations), and that it was incomplete for processing purposes under Title 23 SCC (environmental policy act).

Schultz resubmitted his application on April 7, 1997. PDS deemed this application "complete for regulatory purposes" but advised Schultz that it required additional information under Title 23 SCC in order to process the application. Although extremely frustrated with what he perceived as the County's undue delay, he nevertheless provided PDS with additional information on March 4, 1998. When Schultz had received no response from PDS by April 23, the NORETEP planner, Gene Miller, sent PDS a letter stating that "[w]e have been patient[ ] and have diligently worked to satisfy *your* (not County Code) requirements although they have substantially delayed the process and have added considerable expense. . . .We have addressed all of the issues contained in your letter and hope that you will now process this application as required by county code."

In response, on April 30, 1998, PDS denied Schultz's application. In a detailed notice of denial, PDS pointed out that Schultz was repeatedly informed that a recommendation of approval from the Snohomish Health District was required to demonstrate that the project complied with potable water and on-site sewage disposal recommendations.[1] The notice also stated that Schultz was aware that the existing private road on the property "would exceed the number of lots and ADT [average daily trips] permitted for a private road as specified in SCC 20.28.010(9)," and thus, the application needed to provide for future dedication of a public road. The letter concluded that "the applicant has

---

[1] The only comments from the Health District, issued on April 24, 1998, stated that the proposed project did not, "under present conditions, meet the minimum requirements of their regulations."

stated clear refusal to revise the short subdivision to conform with applicable regulations."

Schultz appealed PDS's decision to the Snohomish County Hearing Examiner, who sustained the decision denying the short plat and denied Schultz's petition for reconsideration. The Snohomish County Superior Court affirmed the examiner's decision, and Schultz now appeals to this court. He asserts that under RCW 36.70C.130, 42 U.S.C. § 1983, and RCW 64.40.020, PDS violated statutory development application deadlines, "developed and applied a two-step process to Schultz which has no legislative standards for determining completeness," and "unlawfully used this discretionary process to demand developer exactions[2] under the guise of additional information needed for continued processing under the 'completeness for processing' test."

## DISCUSSION[3]

■ SCC 20.20.030 provides that "[p]reliminary short plats shall be approved, denied, or denied without prejudice within 30 days from the date the application is deemed complete for processing, unless the applicant consents to an extension of that time period." The parties first dispute whether an application is complete for processing when the applicant has submitted all documents set out in the "short plat submittal checklist" contained in SCC 20.24.010.[4] The County contends that although the application Schultz submitted on April 7, 1997, satisfied the requirements of this checklist, it was not yet complete for processing, and thus, the 30-day time period contained in SCC 20.20.030

---

[2] By this we presume Schultz refers to PDS's decision that dedication of land to meet public road standards under the SCC is required.

[3] An appellate court reviews local land use decisions based upon the record created before the local administrative hearing officer and/or the body hearing any administrative appeal. RCW 36.70C.120(1); RCW 36.70C.130(1).

[4] SCC 20.24.010 requires an application to contain, among other things, title documentation, zoning information, site characteristics, number of lots, utility information, maps, drainage and grading plans, an environmental checklist, a traffic study and applicable filing fees.

did not commence on that date. The hearing examiner agreed:

> The county code uses two terms ("complete" and "complete for processing") when discussing short subdivision application filing. The difference must be accorded some purpose. The intent of the code is to create a two step submittal and completeness process. The first step is a paper review conducted in-house when the application documents are presented for filing. That review cannot (for obvious reasons) consider the actual conditions of the short subdivision site. If all items on the checklist appear present, the application is accepted as "complete." It then undergoes the second step where actual conditions are evaluated in the field. Only after that process is the application "deemed complete for processing." PDS may return a filed application to its applicant "if the department determines that the information submitted is not sufficiently accurate or complete for processing."

We agree with the hearing examiner and the County that the SCC envisions a two-step completeness process for short subdivision applications, and that an application does not achieve the second step of becoming complete for processing until PDS has reviewed the permit and determined that the applicant has provided accurate information that is complete enough to allow PDS to render a decision. The deputy prosecutor who argued the case correctly noted that the first step determining whether an application is "complete for regulatory purposes" is intended to establish that the applicant has a vested right to consideration under the laws and rules in effect on the date of that initial determination.[5]

SCC 20.24.020 provides that PDS may refuse to accept for filing a short subdivision application if the department determines that "the information submitted is not sufficiently accurate or complete for processing." Under this code section, "[e]xamples of such inaccuracy or incompleteness include, but are not limited to, naturally occurring site

---

[5] *See* RCW 58.17.033; RCW 36.70B.070(2). Submission of the documents identified in SCC 20.24.010 satisfies the vesting requirement.

conditions different from those represented by application submittals or incorrect submittal information, as determined by the director." This provision governs circumstances in which an application appears to contain all materials required for review, but PDS determines upon further review that it requires additional information to accurately assess the proposal. SCC 20.20.075 then gives an applicant who has been notified in writing that his or her application is inaccurate or requires further information one year from the date of first notification to supplement the application with "information necessary to make the application complete."[6] These provisions support the County's argument that SCC 20.20.030 does not require a decision on an application within 30 days of when the applicant files it, even though it is complete for regulatory purposes, unless it is also complete for processing at that time. It is only after the applicant has submitted the additional information PDS needs to make a decision that the 30-day time period for a decision on the application begins to run.

Having determined that the 30-day time period contained in SCC 20.20.030 is not triggered until an application is complete for processing, we next address whether, after requesting and receiving additional information from the applicant, PDS has an indeterminate amount of time within which to respond. Although not explicitly articulated, the County's position in its brief seems to be that because SCC 20.24.020 does not establish a specific time

---

[6] Schultz argues that SCC 20.20.075 does not apply here because he filed his application on March 12, 1996, and SCC 20.20.075 became effective on April 1, 1996. But PDS deemed his March 12, 1996 application incomplete and returned it to Schultz, who resubmitted his application on April 7, 1997. According to SCC 20.24.020, if "an application which has been returned to the applicant by the department is subsequently resubmitted, it shall be considered as a new application." Thus, we consider Schultz's application under the code provisions in effect as of April 7, 1997, under RCW 58.17.033, which provides that proposed divisions of land "shall be considered under the . . . short subdivision ordinance . . . in effect on the land at the time a fully completed application for preliminary plat approval of the subdivision . . . has been submitted."

period for notification,[7] PDS is not obliged to determine within any specific time frame whether an application is complete for processing or whether additional information is required. We cannot agree.

■ Title 20 of the SCC, the short subdivision code, was adopted under article XI, section 11 of the Washington Constitution[8] to "effectuate the policy of the prescribed state law referring to the platting and dedication of lands, including chapter 58.17 RCW, chapter 36.70 RCW, and chapter 65.08 RCW, and shall not preclude full compliance therewith."[9] Thus, if there are gaps or conflicting provisions in the SCC, the state statutes prevail.[10] Chapter 36.70B RCW, commonly known as Regulatory Reform, sets forth the procedures local government must use in processing permit applications. RCW 36.70B.070, entitled "Project permit applications—Determination of completeness—Notice to applicant," contains specific timelines for local government review of project permit applications. Although neither party briefed the considerable bearing chapter 36.70B RCW has on this case, it was addressed at oral argument, and we find it dispositive.

■ The statute directs that within "twenty-eight days after receiving a project permit application, a local government . . . shall mail or provide in person a written determination to the applicant"[11] stating either that the information is complete, or if it is incomplete, the information necessary for completeness. The statute goes on to require that "[w]ithin fourteen days after an applicant has submitted to a local government additional information

---

[7] SCC 20.24.020 provides only that "[t]he department shall notify the applicant in writing in a timely manner of [its] determination . . . ."

[8] That section authorizes counties to make and enforce local police, sanitary, and other regulations not in conflict with the general laws of this state.

[9] SCC 20.04.020.

[10] An ordinance which violates or conflicts with general statutes is invalid, *Employco Personnel Servs., Inc. v. City of Seattle*, 117 Wn.2d 606, 617, 817 P.2d 1373 (1991), and unconstitutional.

[11] RCW 36.70B.070(1).

identified by the local government as being necessary for a complete application, the local government shall notify the applicant whether the application is complete or what additional information is necessary."[12] It is difficult to imagine how a statute could more explicitly state the time period within which a county is required to request and respond to an applicant's submission of supplemental application materials. Because the County has no authority to abridge the applicant's rights conferred by this state statute, Schultz was entitled to a written response from PDS within 14 days of his March 4, 1998 submission of additional materials. It is undisputed that PDS did not meet this deadline.

██ But even though PDS violated the statute, there is no evidence in the record of specific damages as a result of its delay. In his briefs, Schultz argued without elaboration that he was entitled to "delay damages, additional administrative costs due to the delay in the application process by the permit official, and attorneys fees." At oral argument, however, Schultz claimed that if PDS does not respond to an applicant within the relevant time period, chapter 36.70B RCW deems the application automatically approved. Thus, he argued, damages flowed from PDS's wrongful denial of his application, not simply from its wrongful delay.

The statute compels no such conclusion. RCW 36.70B.070-(4)(a), the section on which he relies, directs only that an application "shall be deemed complete" if the government does not provide a written response to the applicant within the relevant time period. It does *not* direct that the application shall be approved as submitted. Because it is clear from the record, and Schultz does not dispute, that his application did not contain the required certification from the Health District stating that the subdivision proposal adequately provided for potable water and sanitary waste, the application could not have been approved. Thus, in the absence of any specific showing of delay damages, the

---

[12] RCW 36.70B.070(4)(b).

untimely denial of his application did not damage Schultz.[13]

■ Even if Health District certification was not necessary for approval, PDS's alternative ground for denying Schultz's application was his failure to provide for future construction of a public road.[14] SCC 20.28.010(10) directs that short subdivisions "shall provide for the future conversion of [a] private road to a public road" if the road "has the potential of providing access for more than eight lots."[15] We agree with Schultz that the trial court and the hearing examiner erred by interpreting "potential" in this provision as deriving from a hypothetical calculation of the number of lots which could be developed in some unspecified area in the absence of any evidence that the hypothetical development is either anticipated or imminent. The hearing examiner's interpretation that "[p]otential reflects neither present users [of the road] nor the number that would exist if currently known applications in the area were to be approved," and thus, "[p]otential relates to the hypothetical number that could be served given considerations such as acreage with access rights to the private road and zoning" is

---

[13] We disagree with PDS, the trial court, and the hearing examiner that Schultz's engineer's letter to PDS constituted a demand for action and a clear refusal to provide additional information and, as such, required that the application be processed "as is." Schultz's letter expressed frustration with PDS's dilatory processing of his application and requested that PDS "issue a determination as is required . . . by County Code," but it concluded with, "[i]f you have any questions or need additional information please feel free to contact me at the above address." We do not construe this letter as refusing to supplement his application. We do not, however, address whether Schultz was damaged when PDS denied his application without allowing him to supplement it because he does not raise this issue.

[14] Because Schultz argues only that SCC 20.28.010(10)'s public road provision does not apply to his application, and does not argue that the provision itself violates applicants' substantive due process rights or constitutes a taking, a constitutional analysis is not required.

[15] In its brief the County presents an inscrutable argument that "the reference in SCC 20.28.010(10) to provision 'for the future conversion of such private road to a public road' is inapplicable here because not all of Schultz's proposed lots have a minimum of five acres. Therefore, SCC 20.28.010(7) and (8) apply." This makes no sense because subsections (7) and (8) apply to access only within a given short subdivision. Subsections 9 and 10 go on to direct that private roads may serve only eight lots, and that if they have the potential for serving more, the private road shall be converted into a public one.

untenable.[16] So, too, is the position advanced by the Department of Public Works (DPW). A February 2, 1996 DPW memo directed that the "number of lots or ADT that a road has the potential of providing access for is to be calculated using reasonable assumptions of actual and anticipated development. What is common in the surrounding area, site characteristics, and the stated intent of the developer are all to be considered." These interpretations are almost entirely speculative and provide no clear guidance to the applicant or neighbors of the proposal about what the County considers when determining whether public road dedication is required. If the County wants to base its public road determination on factors other than the number of lots that are existing, proposed in the current application or pending in other applications, it must clearly craft and articulate these other factors to ensure that each applicant bears his or her proportional share of the burdens of necessary road dedication.[17]

While it is impossible to determine from the record, even under our definition of potential, exactly how many lots would burden the private road Schultz proposes to use, that number would likely exceed eight. PDS concluded that the " 'existing' lots are determined to total 10, with one additional lot proposed on the private road, for a total of eleven lots." Schultz, however, who purports to use the same "existing and proposed standard" as PDS did, argues that there are "8 lots 'potentially' taking access from the private road; three lots in the Schultz application, four lots in the Poeschel application, and one additional NORETEP lot."[18] To add further confusion, the hearing examiner and the trial court also reached different conclusions under the "hypothetical development" standard. The hearing exam-

---

[16] Apparently, the trial court agreed with the examiner's interpretation.

[17] *See* SCC 20.28.010(10). We understand the County's goals in assuring that there is an adequate road network and that those creating the need for public roads pay their fair share, in dedicated land and/or funding, to provide them. However, the current formulation is woefully inadequate to give notice or even to provide a basis for a tenable decision, as this case illustrates.

[18] Schultz is omitting one lot that has easement access to the private road.

iner concluded that "the potential number of lots that could be served by the private road is approximately 20" while the trial court found:

> The proposed four-lot subdivision of Schultz's lot in conjunction with the proposed four-lot subdivision of Poeschel's lot, and the third lot also formerly owned by NORETEP and for which NORETEP granted this easement as that parcel's only access requires dedication of a public road pursuant to SCC 20.28.010, even without consideration of the 120 acre parcel also to the east for which NORETEP also granted this easement.

These irreconcilable calculations graphically demonstrate the impracticality of SCC 20.28.010(10) and the County's interpretations of it. But because we can tell that Schultz's count omitted at least one lot with access to the private road, and there is no reason to assume the lot would not use that access under our interpretation of "potential," we are confident PDS could not have approved the application under existing law. We therefore affirm the trial court.

Cox and APPELWICK, JJ., concur.