[No. 70572-1. En Banc.]
Argued October 16, 2001.    Decided April 18, 2002.

BART HOWE, ET AL., *Petitioners*, v. DOUGLAS COUNTY, *Respondent*.

*Brian J. Dorsey* (of *Davis Arneil Law Firm*), for petitioners.

*Robert R. Siderius, Jr.*, for respondent.

*Kristopher I. Tefft* on behalf of Building Industry Association of Washington, amicus curiae.

CHAMBERS, J. — Bart and Connie Howe sued Douglas County after their property was damaged by flooding. The trial court dismissed the suit at summary judgment based on the public duty doctrine and on the recorded exculpatory language in the deed to the property. We are asked to determine the permissible scope of such an exculpatory clause, and whether a local government is subject to suit on claims of alleged negligent permitting and negligent main-

tenance.[1] We hold that narrowly tailored, bargained-for exculpatory clauses may be permissible, but that exculpatory clauses secured routinely for the performance of a government function are not permitted.

## FACTS

In 1987, the Fancher Heights Association (Fancher) began development of a new subdivision, Fancher Heights, in East Wenatchee. It sought approval from Douglas County (County) to build homes, sites for homes, and the required supporting infrastructure such as the roads and the drainage system. Before approval, the drainage plans were submitted to various government agencies for review and recommendation. The Douglas County Regional Planning Commission and the United States Department of Agriculture Soil Conservation Service were both concerned the site was susceptible to flooding. In response, the County rejected Fancher's proposed flood plan, adequate for only a 10-year flood, and required a plan adequate for a 25-year flood. The County also required that Fancher execute and record a waiver of liability for damages caused by the construction and maintenance of public facilities and lands in the subdivision. Later that year the drainage system and roads were deeded to the County. The County took responsibility for the maintenance after the infrastructure became public property.

In 1992, the Howes purchased a site in Fancher Heights and thereafter built a house. The Howes received a Statutory Warranty Deed, which included the waiver required by the County:

---

[1] Howes raised for the first time, in a motion for reconsideration to the Court of Appeals opinion, that this waiver is a failed covenant because it does not run with the land. Because of our resolution of other issues, and because the court below had inadequate time to consider the issue, we decline to address it here. *See* RAP 13.7(b) ("The Supreme Court may limit the issues to one or more of those raised by the parties."). We note the issue is given extensive consideration in *1515-1519 Lakeview Boulevard Condominium Ass'n v. Apartment Sales Corp.*, 146 Wn.2d 194, 43 P.3d 1233 (2002) filed concurrently with this opinion, and its application would not likely change the result here.

SUBJECT TO the waiver of all claims for damages against any governmental authority arising from the construction and maintenance of public facilities and public property within the subdivision.

Clerk's Papers (CP) at 138.

The Howes' property suffered from several severe floods over the next few years. Surface runoff from rainstorms in 1993 and 1994 caused the drainage system in Fancher Heights to fail three times and, each time, floods damaged the Howes' property. According to Connie Howe, county officials said the flooding was partially caused by an inadequate drainage system, and partially by sand that had accumulated in the drywells. County crews had erroneously believed the drywells were manholes, because they were capped with manhole covers, and were not regularly cleaning them. The County took remedial action, adding a new drywell and a new trench drain to improve the drainage. The Howes sued and ultimately settled with the County for $20,769.46.[2]

On June 21, 1997 again the rains came, again the drainage system failed, and again the property flooded. Again the Howes brought suit against the County. But this time the County brought a motion for summary judgment based upon the exculpatory language in the deed. The Howes argued the waiver was an unenforceable attempt to illegally recreate the sovereign immunity abolished by the Washington State Legislature. The trial court granted summary judgment to the County based on the public duty doctrine and the recorded waiver. The Court of Appeals affirmed. We reverse in part.

ISSUES

1. Does the requirement of a waiver of liability for damages arising out of the construction and maintenance of public facilities and public property violate public policy?

---

[2] This settlement appears to represent the reduction in value to the house caused by the floods, plus actual costs incurred. *See* CP at 163.

2. May the Howes maintain an action against the County for negligence in granting the developer a building permit?

3. May property owners maintain a negligence action against local government for failure to maintain a storm drain system?

## ANALYSIS

■ This matter is here on summary judgment, presenting only questions of law. We apply de novo review. *Rivett v. City of Tacoma*, 123 Wn.2d 573, 578, 870 P.2d 299 (1994).

### Enforceability of the Waiver

The primary question is whether and, if so, to what extent this waiver violates the legislative abrogation of sovereign immunity. The State Legislature abolished sovereign immunity. Washington State and its subdivisions are therefore liable for their torts and subject to suit like any other person or corporation. *See* RCW 4.96.010(1) ("All local governmental entities . . . shall be liable for damages arising out of their tortious conduct . . . ."). The Howes argue that conditioning a building permit upon an exculpatory waiver violates the letter and spirit of RCW 4.96.010 by resurrecting sovereign immunity. We agree that if this waiver does resurrect sovereign immunity, it violates state law and is thus void. Howe primarily relies upon two of our opinions for support, *Rivett*, 123 Wn.2d 573, and *Employco Personnel Services, Inc. v. City of Seattle*, 117 Wn.2d 606, 817 P.2d 1373 (1991). In both cases, we voided city ordinances purporting to grant limited immunity from suit to the cities. The County argues *Rivett* and *Employco* are inapplicable.

In *Employco* we considered whether a Seattle ordinance limiting city liability violated the abolition of sovereign immunity. The ordinance said: "Seattle City Light Department 'shall not be liable for any loss, injury, or damage resulting from the interruption . . . of electric service from

any cause.' " *Employco*, 117 Wn.2d at 608 (quoting SEATTLE MUNICIPAL CODE 21.49.110(S)). Employco brought suit after an underground fire caused widespread power outages and interrupted business. Seattle argued the suit was barred by the ordinance. We found the ordinance was void, reasoning:

> The City may exercise only such power as is delegated to it by the Legislature. It is a general requisite to the validity of an ordinance that it conform to, and not violate, general statutes. In case of conflict, the ordinance is void.

*Employco*, 117 Wn.2d at 617 (footnotes omitted). Similarly, in *Rivett*, we invalidated an ordinance requiring property owners to maintain the sidewalks abutting their property and to indemnify Tacoma for all losses. *Rivett*, 123 Wn.2d at 578, 585. We ruled that "the requirement of indemnification is in violation of the abolition of governmental immunity . . . because it purports to immunize the City from payment for damages caused by its own negligence." *Rivett*, 123 Wn.2d at 583.

Of course, *Rivett* and *Employco* do not govern this case, as they are both analytically rooted in the supremacy of legislative enactments over municipal ordinances; a conflict not present here. However, both cases articulate a powerful principle of Washington jurisprudence—that state sovereign immunity has been abolished and this Court will carefully scrutinize apparent local government attempts to recreate it. We will not hesitate to void such ordinances.

■ Before turning to whether this exculpatory clause violates the letter or underlying principles of the abrogation of sovereign immunity, we will consider the County's contention that this waiver is actually required or at least authorized by RCW 58.17.165. That statute says in relevant part:

> If the plat . . . is subject to a dedication, the . . . written instrument shall contain the dedication of all streets and other areas to the public . . . and a waiver of all claims for damages against any governmental authority which may be occasioned to the adjacent land by the established construction, drainage and maintenance of said road.

RCW 58.17.165.

The Court of Appeals found RCW 58.17.165 was evidence of a legislative policy authorizing such waivers, and concluded waivers were not forbidden by the public policy of this State or the abolition of sovereign immunity. While we agree with much of the reasoning of the Court of Appeals, we hold that it took its conclusion too far. We agree RCW 58.17.165 demonstrates a legislative acceptance of waivers of liability in the limited circumstance where a local government is taking title to infrastructure constructed by a developer. Reading RCW 58.17.165 in the context of the abolition of sovereign immunity, we conclude that this waiver went too far to the extent it exculpates the County for its own future negligence.

Where governments must, by law, accept streets, public areas, and other improvements constructed by a private developer, they may limit their liability for harms *caused* by the private developer. That is precisely what RCW 58.17.165 requires, and impliedly what it authorizes. However, RCW 58.17.165 is limited, and we decline to extend it. First, the statute is limited to plat subdivisions subject to a dedication. Second, the statutory waiver is limited to damage occasioned to the "adjacent land." Third, the statutory waiver applies only to roads and the associated drainage systems. Finally, and for our purposes, most importantly, the waiver is limited to "all claims for damages against any governmental authority which may be occasioned to the adjacent land by the *established* construction, drainage and maintenance of said road." RCW 58.17.165 (emphasis added). "Established"[3] modifies construction, drainage and maintenance, and must be read to apply to that infrastructure at the time it is dedicated to the County.

█ The County's interpretation of this waiver goes far beyond the type authorized by RCW 58.17.165 and, to the extent it exculpates the County for its own future negligence, violates the Legislature's explicit abolition of sover-

---

[3] Establish: "To settle, make, or fix firmly; to enact permanently." BLACK'S LAW DICTIONARY 566 (7th ed. 1999).

eign immunity. Blanket grants of immunity secured routinely for the performance of a public function, such as granting a plat or development, differ little from passing ordinances immunizing the granting body from actions for its own negligence, and are not allowed.

We reaffirm our holding in *1515-1519 Lakeview Boulevard Condominium Ass'n v. Apartment Sales Corp.*, 146 Wn.2d 194, 43 P.3d 1233 (2002). We find no evidence the Legislature intended to bar local governments from bargaining with permit seekers to limit liability for allowing development in marginal lots. A narrowly drafted release for risks specific to a particular activity or condition is not an impermissible attempt to functionally recreate sovereign immunity and does not violate RCW 4.96.010. In *1515-1519 Lakeview* we hold that if because of the shape, composition, location or other characteristic of property to be improved there exists risks unique to that particular property, parties may reach an arms-length, bargained-for agreement, which may include waivers of liability limited to the proposed use and character of the property. Therefore, we hold such waivers that are fairly authorized by statute, or that merely exculpate local government for harms caused by identified or obvious preexisting conditions of the property, are allowable. We also reaffirm our holding in *1515-1519 Lakeview* that such waivers may not be used to exculpate local governments from their own negligence. To the extent that this waiver limits the County's liability for otherwise actionable negligence, it is void.

## Negligent Permitting

■ ■ We turn now to whether these facts otherwise support a cause of action for negligent permitting. We have held negligent permitting cannot be the basis of a negligence claim against local government, absent a recognized exception. *See Taylor v. Stevens County*, 111 Wn.2d 159, 759 P.2d 447 (1988); *accord Phillips v. King County*, 136 Wn.2d 946, 968 P.2d 871 (1998). Under stare decisis, this Court

will not overturn a prior holding unless it is shown that it is incorrect or harmful; no such showing has been made here. *Bishop v. Miche*, 137 Wn.2d 518, 529, 973 P.2d 465 (1999).[4]

■ The Howes assert the "special relationship" exception. To fall within the "special relationship" exception on their negligent permitting claim, the Howes must establish: "(1) there is direct contact or privity between the public official and the injured plaintiff which sets the latter apart from the general public, and (2) there are express assurances given by a public official, which (3) gives rise to justifiable reliance on the part of the plaintiff." *Taylor*, 111 Wn.2d at 166. Notwithstanding the enforceability of the waiver, the Howes have not satisfied this test. They did not have direct contact with county officials, and they did not receive express assurances that the property was safe at the time of permitting and, therefore, they had nothing upon which to justifiably rely.

### Negligent Maintenance

■ Finally, we must decide whether the Howes may pursue their claim of negligent maintenance. We note that failure to maintain a drainage system has resulted in municipal liability. *Sigurdson v. City of Seattle*, 48 Wn.2d 155, 162, 292 P.2d 214 (1956).[5]

We hold the Howes may pursue their claim of negligent maintenance. We have already determined that enforcing the exculpatory clause against future maintenance claims would violate the abolition of sovereign immunity, RCW 4.96.010. We also hold the Howes have provided sufficient evidence of a "special relationship" to overcome summary judgment. The Howes allege that they spoke directly with county agents about the flooding, that they were given

---

[4] The public duty doctrine has come under recent criticism. *Babcock v. Mason County Fire Dist. No. 6*, 144 Wn.2d 774, 795, 30 P.3d 1261 (2001) (Chambers, J., concurring). We note the public duty doctrine had its roots in building permitting and inspections cases.

[5] This case predates much of the development of modern theories of municipal liability.

express assurances that the flooding would be remedied, and that they relied on these assurances to their detriment.[6] This is sufficient to overcome summary judgment on this issue. Therefore, we reinstate claims arising from the County's alleged negligent maintenance.[7]

## CONCLUSION

We hold municipal corporations may seek waivers of liability for harms arising out of preexisting conditions when considering permits. However, waivers may not become a back door for the resurrection of sovereign immunity and, therefore, are not valid to exculpate the municipal corporation from its own future negligence. We therefore reverse in part, affirm in part, and remand for further proceedings consistent with this opinion.

ALEXANDER, C.J., and SMITH, JOHNSON, MADSEN, SANDERS, IRELAND, BRIDGE, and OWENS, JJ., concur.

---

[6] The County asserts in its answer that there was no evidence the damage at issue in this suit was caused by the failure to maintain the system. We express no opinion on the viability of this theory. The County is, of course, free to develop this argument in further proceedings.

[7] During oral argument, the Howes argued that the County had a duty to remediate any inherently dangerous or hazardous conditions of the infrastructure built by the developer and deeded to the County, whenever the County had actual knowledge of the danger. The Howes relied on the "failure to enforce exception" to the public duty doctrine and by analogy to *Atherton Condominium Apartment-Owners Ass'n v. Blume Development Co.*, 115 Wn.2d 506, 531, 799 P.2d 250 (1990) to make this argument. We find that this issue is not properly before us; however, we do not preclude the Howes from arguing this theory under their claim of negligent maintenance on remand.