# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

ANTHONY YOUNG and JOSEPH
MULCAHY, in their individual capacities
and as a marital community,

Appellants,

v.

CITY OF ANACORTES, a Washington
Municipal Corporation; TODD J.
WELLIVER and ERINN D.L.,
WELLIVER, in their individual capacities
and as a marital community,

Respondents.

No. 80002-7-I

DIVISION ONE

UNPUBLISHED OPINION

MANN, C.J. — Anthony Young and Joseph Mulcahy appeal the trial court's order granting summary judgment and dismissing their action against the City of Anacortes (City). Young and Mulcahy argue that there are genuine issues of material fact whether the City had a common law duty to maintain a drainage ditch located on its right-of-way, and if not, whether the "special relationship" exception to the public duty doctrine applies. We agree and vacate the order granting summary judgment and remand for further proceedings.

Citations and pin cites are based on the Westlaw online version of the cited material.

## I.  FACTS

In 1890, the City accepted the plat of the Pleasant Slope Addition.  The 1890 plat subdivided property into multiple city blocks and lots, including 80-foot wide public rights of way.  One of the right-of-ways was E Avenue.  A portion of the 1890 plat was replatted in 2005 as the Plat of Pleasant View.  The 2005 plat vacated the east half (40 feet) of E Avenue.  The west half of E Avenue remained a public right-of-way.

In 2004, Todd and Erinn Welliver (the Wellivers) purchased property immediately west of E Avenue.  Young and Mulcahy purchased the property (Young-Mulcahy property) immediately east of E Avenue and east of the Wellivers in 2009.  The Young-Mulcahy property includes the vacated, east half of E Avenue.  The land slopes generally downhill from the Welliver property to the Young-Mulcahy property.  At the time Young and Mulcahy moved in, drainage from the Welliver property was captured by a drainage ditch located on the City-owned portion of E Avenue.  The ditch channeled drainage away from the Young and Mulcahy property northward into a native growth protection easement area (NGPE).

As they were moving in, Young and Mulcahy observed Todd Welliver, on multiple occasions, using heavy equipment to excavate, move, grade, and fill land in the area between his home site and theirs.  Concerned with the land modifications, Young contacted the City's planning department, including its planning director Ryan Larson, and assistant planning director Don Measamer.

In an e-mail exchange beginning September 10, 2009, Young expressed the concerns he and Mulcahy had regarding the grading on E Avenue.  On October 1, 2009, Measamer e-mailed Young, informing him that he had spoken with Welliver, who

would need to obtain a right-of-way permit for modifications on City property. Measamer stated:

> I have been in contact by phone with your neighbor, Mr. Todd Welliver, regarding the grading next door and will meet on site with Todd on Friday. Mr. Welliver will need to acquire a right of way permit and provide drainage control per Public Works and Building Department approval. We are not certain what drainage methods will be needed until the site visit and consultation with the Public Works Department.

Measamer conducted the site visit and reported that when he arrived at E Avenue, nothing was happening on the property. Based on Young's request, Measamer asked Welliver to remediate the drainage ditch on E Avenue. Welliver indicated that he did so.

Young and Mulcahy contend that Welliver continued his grading activities on his land and within the E Avenue right-of-way between 2011 and 2015. Young and Mulcahy claim that following Welliver's work, "all the water that previously flowed through the E Avenue drainage ditch and onto the NGPE instead diverted across the E Avenue right-of-way and directly onto our property."

As their issues continued, Young reported that although there were no additional e-mails, there were "a lot of face-to-[face] conversations" where Measamer repeatedly told Young and Mulcahy that "the City would work out a solution that would work for everyone."

In June of 2015, Young and Mulcahy applied for a temporary encroachment permit into E Avenue in order to address their drainage concerns. The Wellivers simultaneously submitted their own permit application. Each application was tentatively approved, but the Wellivers objected to the splitting of E Avenue, citing the replatting of

Pleasant Slope and vacatur of half of the former E Avenue to the Young-Mulcahy property. Welliver argued that the earlier vacatur gave Young and Mulcahy half of the right-of-way, so the remainder should be his to develop. After a public hearing, the City ultimately determined that both encroachment applications were inconsistent with the City's policy regarding right-of-ways, and did not issue permits.

Young and Mulcahy assert that the change in flow caused "significant and ongoing damage to our home and property, including land movement, settling in various parts of our home, walls cracking and separating, settling/cracking of our entry patio and walkway, and water collecting in our basement." A March 23, 2017, City investigation concluded that the damage to the Young-Mulcahy property was a result of subsurface aquifer flow.

In May 2018, Young and Mulcahy sued the Wellivers and the City in Skagit County Superior Court. After answering the complaint, the City moved for summary judgment and dismissal, arguing that Young and Mulcahy's claims were barred by the public duty doctrine. The trial court agreed and dismissed the complaint. The trial court then granted Young and Mulcahy's motion under CR 54(b) that the judgment against the City was an appealable final order. Young and Mulcahy appeal.[1]

## II. ANALYSIS

### A. Standard of Review

We review summary judgment decisions de novo. Int'l Marine Underwriters v. ABCD Marine, LLC, 179 Wn.2d 274, 281, 313 P.3d 395 (2013). "Summary judgment is

---

[1] The underlying lawsuit against the Wellivers was subsequently dismissed pursuant to a settlement agreement.

proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Int'l Marine Underwriters, 179 Wn.2d at 281.

We consider "the facts submitted and all reasonable inferences therefrom in the light most favorable to the nonmoving party." Chelan County Deputy Sheriffs' Ass'n v. Chelan County, 109 Wn.2d 282, 294, 745 P.2d 1 (1987). "Even where the evidentiary facts are undisputed, if reasonable minds could draw different conclusions from those facts, then summary judgment is not proper." Chelan County, 109 Wn.2d at 295.

B. Did the City have a Duty to Maintain the Drainage Ditch?

In a negligence action, the threshold determination is whether the defendant owes a duty of care to the plaintiff. Taylor v. Stevens County, 111 Wn.2d 159, 163, 759 P.2d 447 (1988). Regardless of the identity of the defendant, a duty must be one owed to the injured plaintiff, not the public in general, to be actionable. Chambers-Castanes v. King County, 100 Wn.2d 275, 284, 669 P.2d 451 (1983). This principle of negligence law is known as the public duty doctrine. Under this doctrine, no liability may be imposed for a public official's negligent conduct unless it is shown that the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general ("a duty to all is a duty to no one"). Osborn v. Mason County, 157 Wn.2d 18, 27, 134 P.2d 197 (2006). The public duty doctrine, however, is not applicable in all circumstances, such as where the public entity has a common law duty to maintain its own property.

Washington courts have long-recognized that when a municipality uses its discretionary power to construct a drainage system, the municipality must exercise reasonable care in maintaining the system. In Ronkosky v. City of Tacoma, 71 Wash.

148, 128 P.2 (1912), the City of Tacoma graded a street across from a deep gulch by cribbing and filling the street, and installing a culvert. The gulch traditionally carried large amounts of water during the rainy season. Ronkosky, 71 Wash. at 149. Following the modification of the street, John Hannam constructed a small house, barn, and woodshed a short distance above the street fill. F. W. Ronkosky and his family occupied the house. Ronkosky, 71 Wash. at 149. Over time the culvert, either through decay or neglect, was no longer properly functioning to divert water flow. Ronkosky, 71 Wash. at 149, 150. One night copious rainfall flooded the culvert and the home, leaving barely enough time for Ronkosky and his family to escape. Ronkosky, 71 Wash. at 150. The court held that, while Tacoma had no primary obligation to construct the drainage system, it did have the duty to maintain it once the system was constructed. Ronkosky, 71 Wash. at 153.

Similarly, in Howe v. Douglas County, 146 Wn.2d 183, 186, 43 P.3d 1240 (2002), Douglas County took responsibility for the maintenance of a subdivision's roads and drainage system. The Howes built a home in the subdivision, which suffered floods partially due to sand that had accumulated in the drainage system. Howe, 146 Wn.2d at 187. The Howes sued Douglas County for negligent maintenance. The Supreme Court, recognizing that a failure to maintain a drainage system has historically resulted in municipal liability, held that the Howes may pursue their claim of negligent

maintenance against the County. Howe, 146 Wn.2d at 192 (citing Sigurdson v. City of Seattle, 48 Wn.2d 155, 162, 292 P.2d 214 (1956)).[2]

Here, Young and Mulcahy presented evidence that there was historically a ditch on E Avenue within the City's right-of-way and that after the 2005 plat of Pleasant Slope, the ditch carried water north toward the NGPE. Young and Mulcahy also presented evidence that the ditch was subsequently filled and resulted in damage to their property. At oral argument, the City conceded the existence of the ditch, claiming that they were unsure of its origin and purpose. The origin and purpose of the ditch, and whether the City had a duty to maintain it, are issues of material fact and not amenable to summary judgment.

C. Is the Special Relationship Exception to the Public Duty Doctrine Applicable?

If at trial it is determined that the City did not have a duty to maintain the ditch, then the court must address whether the City is shielded from liability under the public duty doctrine for its failure to require the Wellivers to repair the ditch. Young and Mulcahy argue there is a genuine issue of material fact whether the "special relationship" exception to the public duty doctrine applies. We agree.

Again, under the public duty doctrine, a plaintiff cannot recover against a municipal corporation in tort unless the plaintiff can show that the duty breached was owed to an individual and "not merely a general obligation owed to the public." Babcock v. Mason County Fire Dist. No. 6, 144 Wn.2d 774, 785, 30 P.3d 1261 (2001).

---

[2] In Phillips v. King County, our Supreme Court recognized, in dicta, that situations could arise where a municipality may be liable for a failure to maintain a public drainage system, and the use of county controlled property for the building of part of a drainage system may give rise to liability on the part of a municipality. 136 Wn.2d 946, 966-69, 968 P.2d 871 (1998).

There are four recognized exceptions to the public duty doctrine under which the government acquires a duty of care owed to a particular individual (1) where there is a legislative intent to impose a duty of care, (2) where a "special relationship" exists between plaintiff and the public entity, (3) where the government has engaged in volunteer rescue efforts, or (4) where the government is guilty of a "failure to enforce" a specific statute. Babcock, 144 Wn.2d at 785-86.

A "special relationship" arises when (1) there is privity or direct contact between the public official and the plaintiff, (2) the official, in response to a specific inquiry, provides express assurances, and (3) the plaintiff justifiably relies on the representations of the official. Taylor, 111 Wn.2d at 166. The creation of a "special relationship" between the plaintiff and the public official gives rise to a duty to use reasonable care when furnishing information. Once the existence of duty is established, the plaintiff may proceed in tort against the local government. Taylor, 111 Wn.2d at 163.

Washington courts recognize that the "special relationship" exception to the public duty doctrine is a question of fact. See, e.g., Beal v. City of Seattle 134 Wn.2d 769, 786 954 P.2d 237 (1998) (holding that the "special relationship" exception to the public duty doctrine applied when a 911 caller justifiably relied on communication from a public official, and that justifiable reliance is a question of fact generally not amenable to summary judgment). Washington courts also recognize this question of fact in the context of drainage system maintenance.

For example, in Lakeview Boulevard Condominium Ass'n v. Apartment Sales Corp., 146 Wn.2d 194, 196, 43 P.3d 1233 (2002), homeowners sued the City of Seattle

for negligence in maintaining storm drains and granting permits. The Supreme Court explained that "alleged negligent permitting alone cannot be the basis of a negligence claim against local government, absent a recognized exception;" the homeowners did not establish that they fell within a recognized exception. Lakeview, 146 Wn.2d at 205. However, the court held that an affidavit from a resident stating she relied on assurances from the city that it would maintain the storm drains was sufficient to defeat a claim for summary judgment. Lakeview, 146 Wn.2d at 206. Finding that the homeowner fell with the "special relationship" exception, the court affirmed and allowed the homeowner to pursue negligence claims. Lakeview, 146 Wn.2d at 206.

Here, Young and Mulcahy argue that a "special relationship" was created with the City based on the e-mail and subsequent face-to-face interactions with Don Measamer. Young and Mulcahy assert that (1) there was contact with Measamer, (2) he gave express assurances regarding E Avenue when stating that the Wellivers would need a permit, and (3) Young and Mulcahy relied on these assurances.

Viewed in a light most favorable to Young and Mulcahy, the e-mail exchanges and face-to-face interactions between Young and Measamer, as well as Young's declaration that he and Mulcahy relied on these assurances, appears sufficient to create the (1) contact, (2) express assurances, and (3) reliance necessary to fulfill the "special relationship" exception to the public duty doctrine. The accuracy of these claims is an issue of material fact and not amenable to summary judgment.

We vacate the order granting summary judgment and remand for further proceedings.

_Mann, C.J._

WE CONCUR:

_Brennan, J_        _Dwyer, J._