[No. 68028-1. En Banc.]
Argued March 1, 2000.    Decided May 11, 2000.
WESTERN TELEPAGE, INC., *Petitioner*, v. THE CITY OF TACOMA DEPARTMENT OF FINANCING, *Respondent*.

600

*Davis Wright Tremaine*, by *D. Bruce Lamka* and *Dirk Jay Giseburt*, for petitioner.

*Robin Jenkinson, City Attorney*, and *Harding Thomas Roe, Assistant*, for respondent.

*George Carl Mastrodonato*, on behalf of Association of Washington Businesses, amicus curiae.

TALMADGE, J. — We must decide in this case if the City of Tacoma's (Tacoma) local public utility tax on paging services is consistent with the state law definition of a taxable telephone business under RCW 82.04.065(4), and whether Tacoma's tax constitutes an excessive increase in a tax rate pursuant to RCW 35.21.710. Insofar as paging services involve the transmission of data by microwave systems, we conclude Tacoma's local public utility tax on paging services is consistent with RCW 82.04.065. We also hold Tacoma's taxation of paging services under its public utilities tax does not violate RCW 35.21.710, even though Tacoma formerly taxed such activities under the services classifications of its local business and occupation (B&O) tax. We affirm the judgment of the trial court.

ISSUES

1. Does the definition of "telephone business" under RCW 82.04.065 include paging services?

2. Does a municipality violate the restriction of RCW 35.21.710 if it properly classifies and taxes an activity under its local tax ordinances thereby changing the rate of taxation on the activity?

## FACTS

Western Telepage, Inc., d/b/a AT&T Wireless Services (Telepage), has provided paging services in Tacoma and elsewhere in Washington since 1984. It also leases paging devices to some of its customers. Telepage's paging service transmits numeric and alpha-numeric messages to customers. A numeric message is usually transmitted in response to a telephone call made to a customer's pager access number; a telephone company then transmits the call to Telepage's paging terminal. Alternatively, an alpha-numeric message may be prompted by a message sent to the paging terminal by one of several ways, including direct access by modem, dictation to a live operator, and Internet e-mail. For either the numeric or alpha-numeric message, Telepage's paging terminal sends a microwave (radio) transmission to the pager device advising the caller to return a call to the specified telephone number or transmitting the brief alpha-numeric message.[1] Generally, the pager itself does not permit the customer to respond to callers or to initiate messages, nor does it have any of the capacities sometimes associated with more recent innovations in two-way paging—message acknowledgment, embedded responses, or message initiation.

Until 1981, the Legislature imposed a public utility tax on traditional telephone services. Former RCW 82.16.010 (1965), *amended by* LAWS OF 1981, ch. 144, § 2. Recognizing the impending revolution in telecommunications services and wishing to "level the playing field" between regulated

---

[1]Telepage has argued throughout this case that its paging services involve "one-way" communication—its terminal transmits only by microwave to the pager. However, to be fair, it could be argued two-way communications are actually involved. Someone must also telephone, e-mail, or otherwise communicate a message to Telepage's terminal before the paging service has any practical utility.

telephone businesses and emerging, nonregulated telecommunications companies,[2] the Legislature broadened the definition of companies susceptible to the state public utilities tax by amending former RCW 82.16.010. Former RCW 82.16.010(6), the 1981 predecessor to RCW 82.04.065, stated:[3]

> "Telephone business" means the business of providing access to a local telephone network, local telephone network switching service, toll service, or coin telephone services, or providing telephonic, video, data, or similar communication or transmission for hire, via a local telephone network, toll line or channel, or similar communication or transmission system. It includes cooperative or farmer line telephone companies or associations operating an exchange. "Telephone business" does not include the providing of competitive telephone service, or the providing of cable television service.

LAWS OF 1981, ch. 144, § 2(6).

As predicted, the telecommunications industry underwent unprecedented change in the 1980s. The breakup of the AT&T telephone system monopoly involving the local Bell operating companies, *United States v. American Tel. & Tel. Co.*, 552 F. Supp. 131 (D.D.C 1982), *aff'd*, 460 U.S. 1001, 103 S. Ct. 1240, 75 L. Ed. 2d 472 (1983), the onset of

---

[2] The legislature recognizes that there have been significant changes in the nature of the telephone business in recent years. Once solely the domain of regulated monopolies, the telephone business has now been opened up to competition with respect to most of its services and equipment. As a result of this competition, the state and local excise tax structure in the state of Washington has become discriminatory when applied to regulated telephone company transactions that are similar in nature to those consumated [sic] by nonregulated competitors. Telephone companies are forced to operate at a significant state and local tax disadvantage when compared to these nonregulated competitors.

To remedy this situation, it is the intent of the legislature to place telephone companies and nonregulated competitors of telephone companies on an equal excise tax basis with regard to the providing of similar goods and services.

LAWS OF 1981, ch. 144, § 1.

[3] In 1983, the Legislature amended former RCW 82.16.010(6), deleting the subsection and placing the definition of "telephone business" in RCW 82.04.065. LAWS OF 1983, 2d Ex. Sess., ch. 3, §§ 24, 32.

new, competitive long distance telephone services, and the development of new telecommunications services such as cable television, cellular telephones, and Internet-based services were major mileposts in that industry-wide change. Several of these new service industries sought and obtained exemptions from the public utilities tax, which are reflected in the present language of RCW 82.04.065, which states:

(1) "Competitive telephone service" means the providing by any person of telecommunications equipment or apparatus, or service related to that equipment or apparatus such as repair or maintenance service, if the equipment or apparatus is of a type which can be provided by persons that are not subject to regulation as telephone companies under Title 80 RCW and for which a separate charge is made.

(2) "Network telephone service" means the providing by any person of access to a local telephone network, local telephone network switching service, toll service, or coin telephone services, or the providing of telephonic, video, data, or similar communication or transmission for hire, via a local telephone network, toll line or channel, cable, microwave, or similar communication or transmission system. "Network telephone service" includes interstate service, including toll service, originating from or received on telecommunications equipment or apparatus in this state if the charge for the service is billed to a person in this state. "Network telephone service" includes the provision of transmission to and from the site of an internet provider via a local telephone network, toll line or channel, cable, microwave, or similar communication or transmission system. "Network telephone service" does not include the providing of competitive telephone service, the providing of cable television service, the providing of broadcast services by radio or television stations, nor the provision of internet service as defined in RCW 82.04.297, including the reception of dial-in connection, provided at the site of the internet service provider.

(3) "Telephone service" means competitive telephone service or network telephone service, or both, as defined in subsections (1) and (2) of this section.

(4) "Telephone business" means the business of providing

network telephone service, as defined in subsection (2) of this section. It includes cooperative or farmer line telephone companies or associations operating an exchange.

In the early 1990s, representatives of the cellular telephone industry prevailed upon the Legislature to direct the Department of Revenue (DOR) to review state and local taxes on cellular telephone companies. DOR created an advisory committee on cellular telephone services; in turn, that committee recommended a model local ordinance on the taxation of such services. Prompted by the dissemination of this model ordinance, Tacoma initiated a review of its tax treatment of cellular telephone and paging services.

Until 1995, Telepage had reported and paid its B&O taxes locally under the "Services and Other" classification of TACOMA MUNICIPAL CODE (TMC) 6.68.220.[4] Under that classification, Telepage paid a B&O tax of forty-eight one-hundredths of one percent (.0048%) of its gross income, the rate applicable to those "engaged in the business of rendering any type of service[.]" TMC 6.68.220(I). Prior to 1995, Tacoma did not apply its local public utility tax to paging services.

In March 1995, Tacoma adopted Ordinance 25680, which amended Title 6 of the TACOMA MUNICIPAL CODE, and defined pager service for purposes of Tacoma's local public utilities tax as follows:

> "Pager service" means service provided by means of an electronic device which has the ability to send or receive voice or digital messages transmitted through the local telephone network, via satellite or any other form of voice or data transmission.

TMC 6.67.020. TMC 6.67.030 subjects both cellular telephone services and paging services to the local public util-

---

[4]Telepage voluntarily reported and paid the B&O tax at this miscellaneous rate; Tacoma never instructed it to do so. According to Duston Jensen, Manager of the Tax & License Division of Tacoma's Department of Finance, "[t]he manner in which a company has reported does not make it correct or change the law as to the proper reporting classification." Clerk's Papers at 168.

ity tax of six percent of the taxpayer's total gross income. This is the same rate applicable to "telephone businesses" generally. TMC 6.66.030. The tax became effective on July 1, 1995.

After the adoption of the ordinance, Tacoma sent a letter to Telepage stating:

> Effective July 1, 1995, a city tax of 6% will be imposed on paging services, which is defined as a communication service. Prior to July 1, 1995, all gross sales received from customers inside the city limits should be reported under the Service and Other classification.

Ex. 4. When Tacoma discovered pager companies had not been reporting under the proper tax classification, it decided to prospectively collect the proper rate under the proper classification. This decision allowed the companies to continue reporting as they had been doing, but provided a date certain as to when they would be required to begin reporting under the proper classification and paying at the proper rate. Tacoma also believed this decision would limit the financial hardship for the companies' previous underreporting, as it did not seek retroactive adjustment.

Under protest, Telepage paid the tax as required and requested a refund at the end of the year. Tacoma denied the request, and Telepage administratively appealed to the Tacoma Office of the Hearing Examiner. A hearing examiner considered only the issue of whether Telepage's services fit the definition of "pager service" set forth in TMC 6.67.020. The hearing examiner denied Telepage's refund request and affirmed the application of TMC 6.67 to Telepage.

Telepage appealed the hearing examiner's ruling to the Pierce County Superior Court. In its appeal, Telepage alleged it was due a tax refund because its business of providing one-way paging services was not covered by the tax ordinance as properly construed and, if the ordinance applied, the tax exceeded Tacoma's authority under RCW 35.21.710. Telepage moved for partial summary judgment

on the issue of whether the Tacoma ordinance unlawfully increased Telepage's tax rate in excess of two percent and conflicted with the statutory definition of telephone business. The trial court, the Honorable Bryan Chushcoff, denied Telepage's motion and subsequently granted Tacoma's motion for summary judgment, finding the statutory definition was plain on its face and included paging services; thus, Tacoma's ordinance was not in violation of state law.

Telepage appealed to the Court of Appeals, Division Two, which affirmed in a published decision, holding paging services as defined in the Tacoma ordinance are not inconsistent with the state definition of telephone business. *Western Telepage, Inc. v. City of Tacoma*, 95 Wn. App. 140, 974 P.2d 1270 (1999). We granted Telepage's petition for review.

## ANALYSIS

■ We review an order of summary judgment de novo. *Enterprise Leasing, Inc. v. City of Tacoma*, 139 Wn.2d 546, 988 P.2d 961, 964 (1999); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. CR 56(c). We construe the facts and the inferences from the facts in a light most favorable to the nonmoving party. *Reid v. Pierce County*, 136 Wn.2d 195, 201, 961 P.2d 333 (1998); *Wilson*, 98 Wn.2d at 437.

■ Additionally, statutory interpretation is a question of law, which we review de novo. *Enterprise Leasing*, 139 Wn.2d at 551; *Monroe v. Soliz*, 132 Wn.2d 414, 418, 939 P.2d 205 (1997); *Rettkowski v. Department of Ecology*, 128 Wn.2d 508, 515, 910 P.2d 462 (1996).

A. Telephone Business

The basic question in this case is whether the definition of "pager services" in TMC 6.67.020 is consistent with the

statutory definition of telephone services in RCW 82.04.065. Telepage asserts the lower courts incorrectly concluded the statute is unambiguous and includes paging services. Rather, Telepage contends the Legislature did not intend to include paging services in the statute because the statutory definition, when properly construed, is limited to "two-way" communications and paging services do not meet that definition. Tacoma, in turn, argues the statutory definition of telephone services subject to the public utility tax plainly encompasses paging services. Tacoma suggests there is no ambiguity in the language of the statute because paging services involve the transmission of data or information.

Under state law, " '[t]elephone business' means the business of providing network telephone service, as defined in subsection (2) of this section." RCW 82.04.065(4). Network telephone service means:

> the providing by any person of access to a local telephone network, local telephone network switching service, toll service, or coin telephone services, *or the providing of telephonic, video, data, or similar communication or transmission for hire, via a local telephone network, toll line or channel, cable, microwave, or similar communication or transmission system.* . . .

RCW 82.04.065(2) (emphasis added).

■ A statute is ambiguous if it can be *reasonably* interpreted in more than one way. *Vashon Island Comm. for Self-Gov't v. Washington State Boundary Review Bd.*, 127 Wn.2d 759, 771, 903 P.2d 953 (1995) (emphasis added). While a statute is ambiguous if it is susceptible to two or more reasonable interpretations, we are not obliged to discern an ambiguity by imagining a variety of alternative interpretations. *State v. Tili*, 139 Wn.2d 107, 115, 985 P.2d 365 (1999).

■ Moreover, we do not construe unambiguous statutes. *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996). "In judicial interpretation of

statutes, the first rule is 'the court should assume that the legislature means exactly what it says. Plain words do not require construction'." *State v. McCraw*, 127 Wn.2d 281, 288, 898 P.2d 838 (1995) (quoting *Sidis v. Brodie/Dohrmann, Inc.*, 117 Wn.2d 325, 329, 815 P.2d 781 (1991)); *State v. Smith*, 117 Wn.2d 263, 271, 814 P.2d 652 (1991) (" 'Words are given the meaning provided by the statute or, in the absence of specific definition, their ordinary meaning.' ") (quoting *State v. Standifer*, 110 Wn.2d 90, 92, 750 P.2d 258 (1988)). Thus, when construing an unambiguous statute we look to the wording of the statute, not to outside sources such as legislative intent. *Multicare Med. Ctr. v. Department of Soc. & Health Servs.*, 114 Wn.2d 572, 582, 790 P.2d 124 (1990).[5]

■ Here, Telepage's interpretation cannot be harmonized with the plain language of the statute. On its face, the statute is not ambiguous. It defines precisely the range of activity that falls within its purview—the transmission of telephonic, video, data, or similar communication by telephone line or microwave. Although Telepage concedes its paging services involve a transmission of signals by microwave, Br. of Appellant at 28, it denies its services involve "the providing of telephonic, video, data, or similar communication or transmission[.]" RCW 82.04.065(2). Thus, the real issue before us narrowly focuses on whether Telepage transmits telephone, video, data, or similar communication by microwave. Because those terms are not defined in the statute, we turn to their ordinary dictionary meaning. *C.J.C. v. Corporation of Catholic Bishop*, 138 Wn.2d 699, 709, 985 P.2d 262 (1999) (citing *American Legion Post No. 32 v. City of Walla Walla*, 116 Wn.2d 1, 8, 802 P.2d 784 (1991)).

*Webster's* dictionary defines "telephonic" as "conveying sound to a distance . . . of or relating to the telephone . . .

---

[5]One canon of construction indicates ambiguous statutes are to be construed against the taxing entity; it is not applicable here because the statute is clear on its face. *See Dravo Corp. v. City of Tacoma*, 80 Wn.2d 590, 595, 496 P.2d 504 (1972).

carried or conveyed by telephone." WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY 2350 (1971). It defines "video" as "relating to or used in the transmission or reception of the television image." *Id.* at 2551. These definitions do not accurately describe Telepage's paging services. Thus, the only category left under which paging services would constitute a telephone business is if such services involved data communication or transmission. WEBSTER's defines "data" (the plural of "datum") as "material serving as a basis for discussion, inference, or determination of policy . . . *detailed information of any kind.*" WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY 577 (1971) (emphasis added). Likewise, WEBSTER's NEW RIVERSIDE UNIVERSITY DICTIONARY 348 (1984) defines "data" as "[i]nformation, esp. information organized for analysis or used as the basis for decision-making . . . [n]umerical information suitable for computer processing . . . *data* can now function as a singular form in English."

As previously stated, paging services involve the transmission or communication of data because the service transmits numeric and alpha-numeric information to customers by microwave. Simply put, paging services involve the transmission of *information*. As such, paging services plainly fall within the purview of RCW 82.04.065. Nowhere does the statute say only two-way communications are subject to RCW 82.04.065. Furthermore, of the three enumerated types of communication included in the statute, only one, "telephonic," is traditionally a two-way communication. *Western Telepage*, 95 Wn. App. at 146 n.8.

Even were we to discern an ambiguity in the statute requiring our construction of RCW 82.04.065, we do not believe Telepage's arguments support its own interpretation of the statute. First, by its terms, RCW 82.04.065 applies to the transmission of data by microwave. Second, the Legislature *expressly* excluded from RCW 82.04.065(4) various types of "network telephone service," such as competitive telephone services, cable television, radio, broadcast television, and the Internet. It did not expressly exclude

paging services. As we have noted, the mention of one thing implies the exclusion of others, under the maxim "expressio unius est exclusio alterius." *State ex rel. Port of Seattle v. Department of Pub. Serv.*, 1 Wn.2d 102, 95 P.2d 1007 (1939). Thus, where the Legislature did not expressly exclude paging services from the broad definition of network telephone services in RCW 82.04.065(4), it must be assumed the Legislature did so intentionally.

Telepage argues we should be persuaded only "two-way" transmissions are covered by RCW 82.04.065, but it undercuts its own position by acknowledging that "large-scale," one-way data dissemination is subject to the statute. Moreover, Telepage's view on two-way communication as the essence of the definition in RCW 82.04.065 is based on the declaration of a former telephone company lobbyist. Given our reluctance to discern legislative intent from the testimony of a single legislator, *City of Yakima v. International Ass'n of Fire Fighters, AFL-CIO, Local 469*, 117 Wn.2d 655, 677, 818 P.2d 1076 (1991), we find the view of a lobbyist to be of even less utility in discerning *the Legislature*'s intent in enacting a bill.[6] Moreover, the declaration submitted was written 17 years after the events of 1981. A noncontemporaneous understanding of legislative intent is not reflective of the Legislature's rationale for enacting a 1981 statute.

■ Telepage's best argument is the fact DOR apparently does not treat paging as a "telephone business" for tax purposes. Telepage repeatedly refers to an article in a DOR newsletter, *Tax Topics*, which states: "A pager does not provide an ability to establish two-way contact or communication. Consequently, paging services are not classified as telephone services." Clerk's Papers at 261. While we may defer to a long-standing agency interpretation of a statute, *Davis v. Employment Sec. Dep't*, 108 Wn.2d 272, 279, 737 P.2d 1262 (1987), we do so only when the statutory language is ambiguous. *Waste Management, Inc. v.*

---

[6]While lobbyists refer to themselves as the "Third House," this appellation has no grounding in our Constitution. *See* WASH. CONST. art. II, § 1.

*Utilities & Transp. Comm'n*, 123 Wn.2d 621, 627-28, 869 P.2d 1034 (1994); *see also Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 813-14, 828 P.2d 549 (1992). Additionally, the agency interpretation must be clear and definitive. DOR did not adopt a rule on the issue in this case,[7] nor did it adopt an interpretive guideline or a policy statement.[8] We decline to give deference to a short article in an agency bulletin that lacks an official, definitive analysis of the issue in question. In the absence of a DOR rule, interpretive guideline, or policy statement on the issue of paging services being subject to RCW 82.04.065, we believe the language of RCW 82.04.065 compels the conclusion paging services meet the definition of network telephone services in RCW 82.04.065.

■ In summary, we believe RCW 82.04.065 plainly contemplates taxation of paging services because such services involve data transmitted by microwave. Consequently, the definition of "pager service" in TMC 6.67.020 is not inconsistent with the definition of telephone services contained in RCW 82.04.065.

B. Limitation on the Tax Rate

Telepage also contends TMC 6.67 violates the terms of RCW 35.21.710, which limits the rate of increase in local taxes. We disagree.

---

[7]Arguably, an agency policy of the nature Telepage contends existed here had to be adopted as a rule. RCW 34.05.010(16); *Hillis v. Department of Ecology*, 131 Wn.2d 373, 399, 932 P.2d 139 (1997).

[8]RCW 34.05.230 encourages agency adoption of interpretive or policy statements. RCW 34.05.010(8) defines an "interpretive statement" as

> a written expression of the opinion of an agency, entitled an interpretive statement by the agency head or its designee, as to the meaning of a statute or other provision of law, of a court decision, or of an agency order.

RCW 34.05.010(15) defines a "policy statement" as

> a written description of the current approach of an agency, entitled a policy statement by the agency head or its designee, to implementation of a statute or other provision of law, of a court decision, or of an agency order, including where appropriate the agency's current practice, procedure, or method of action based upon that approach.

RCW 35.21.710 states:

> Any city which imposes a license fee or tax upon business activities consisting of the making of retail sales of tangible personal property which are measured by gross receipts or gross income from such sales, shall impose such tax at a single uniform rate upon all such business activities. The taxing authority granted to cities for taxes upon business activities measured by gross receipts or gross income from sales shall not exceed a rate of .0020; except that any city with an adopted ordinance at a higher rate, as of January 1, 1982 shall be limited to a maximum increase of ten percent of the January 1982 rate, not to exceed an annual incremental increase of two percent of current rate: *Provided*, That any adopted ordinance which classifies according to different types of business or services shall be subject to both the ten percent and the two percent annual incremental increase limitation on each tax rate: *Provided further*, That all surtaxes on business and occupation classifications in effect as of January 1, 1982, shall expire no later than December 31, 1982, or by expiration date established by local ordinance. Cities which impose a license fee or tax upon business activities consisting of the making of retail sales of tangible personal property which are measured by gross receipts or gross income from such sales shall be required to submit an annual report to the state auditor identifying the rate established and the revenues received from each fee or tax. This section shall not apply to any business activities subject to the tax imposed by chapter 82.16 RCW. For purposes of this section, the providing to consumers of competitive telephone service, as defined in RCW 82.04.065, shall be deemed to be the retail sale of tangible personal property.

■ Prior to 1995, Tacoma treated paging services as services for purposes of its local B&O tax, but changed the basis for the tax on such services to the local option public utilities tax authorized by state law. We do not believe RCW 35.21.710 was designed to freeze local tax codes at their 1982 status; the statute was, however, designed to severely restrict the tax rates local governments could assess. Local governments can change the tax treatment of certain activities to make that taxation consistent with state definitions,

so long as the effort is not a mere subterfuge, meant to circumvent the express restrictions on local taxing authority set forth in RCW 35.21.710. Telepage fails to show Tacoma's action here was pretextual or prompted by a bad faith effort to circumvent the provisions of RCW 35.21.710. Rather, it was the result of an analysis by DOR's advisory committee of the tax treatment of cellular telecommunications and paging services, as well as the promulgation of a model ordinance. Tacoma made its taxation of paging services consistent with a public utilities tax expressly authoritized by state law. RCW 35.21.714. As such, Tacoma did not raise the B&O tax *rate* on such services, and RCW 35.21.710 does not apply. *See Enterprise Leasing*, 139 Wn.2d at 554.

## CONCLUSION

RCW 82.04.065 is clear on its face. The definition of "telephone business" includes paging services because those services involve the transmission or communication of data by microwave. Tacoma's ordinance is consistent with the statute. Moreover, the Tacoma ordinance does not violate RCW 35.21.710 as it represents Tacoma's good faith effort to properly classify and tax paging services, and does not represent an increase in the local B&O tax rate.

We affirm the judgment in favor of Tacoma.

GUY, C.J., and SMITH, JOHNSON, MADSEN, ALEXANDER, SANDERS, IRELAND, and BRIDGE, JJ., concur.