[No. 47569-0-I. Division One. November 13, 2001.]

THE CITY OF SHORELINE, *Respondent*, v. CLUB FOR FREE SPEECH RIGHTS, *Appellant*.

---

[17] Depending upon the terms of the policies, these costs may also include expenses for defense.

698

*Gilbert H. Levy*, for appellant.

*Ian R. Sievers, City Attorney*, and *Robert F. Noe* (of *Kenyon Dornay Marshall, P.L.L.C.*), for respondent.

APPELWICK, J. — The City of Shoreline Municipal Code (SMC) adult cabaret ordinance, which prohibits live adult entertainers from, inter alia, performing "at a distance of less than four feet" from members of the public, applies to The Club for Free Speech Rights (CFFSR), which is a nonprofit private membership club featuring live adult entertainment. Because CFFSR presented no genuine issue of material fact regarding the ordinance's applicability and because it presented no valid argument that the ordinance is unconstitutional, we affirm.

## FACTS

Until January 1999, Hon's Entertainment Corporation operated "Sugars" live adult entertainment club at 16743 Aurora Avenue North in Shoreline. Hon's featured entertainers from Talents West II, LLC. On January 5, 1999, a trial court[1] issued a permanent injunction prohibiting Hon's from violating the Shoreline Municipal Code adult cabaret ordinance. That ordinance states, in part:

> No employee or entertainer mingling with members of the public shall conduct any dance, performance or exhibition in or about the nonstage area of the adult cabaret unless that dance, performance or exhibition is performed at a distance of no less than four feet, measured from the forehead of the entertainer to the forehead of the customer paying for the dance, performance, or exhibition.

---

[1] King County Superior Court Judge Jim Bates signed this order.

SMC 5.10.070(A)(6). This prohibition is known as "the four foot rule."

The same day the injunction was issued, Hon's ceased operations. Also that day, the Club for Free Speech Rights began operating a nonprofit private membership club featuring live adult entertainment at the same location, 16743 Aurora Avenue North, featuring entertainers from Talents West II. This location is zoned commercial.[2]

The president of CFFSR described CFFSR's purpose as follows:

[CFFSR] is organized for the purpose of providing consenting adults with an opportunity to enjoy lawful, sexually-oriented adult entertainment in a private venue and for bringing about positive political change by seeking the election of political and judicial candidates who are committed to the defense of the Bill of Rights, most notably the rights to freedom of speech, expression, and association, and the right of privacy.

To become a CFFSR member, a person must submit an application, pay a fee, fulfill certain requirements, and be approved by CFFSR's board. As of June 2000, there were approximately 2,300 members of CFFSR who paid membership fees that year. Once inside the club, members can purchase nonalcoholic drinks and pay live adult entertainers for performances.

In February 1999, King County police officers misrepresented their identities and became members of CFFSR. They conducted surveillance of CFFSR's activities and witnessed violations of the SMC adult cabaret ordinance, including the four-foot rule.

On August 20, 1999, the City of Shoreline sought an injunction against CFFSR requiring it to comply with the SMC adult cabaret ordinance. CFFSR counterclaimed, seeking judgments declaring that the ordinance does not apply to its activities because it is a private membership

---

[2] The attorney representing CFFSR affirmed during oral argument before this court that this location is zoned commercial.

club and that the ordinance is unconstitutional as applied. On June 16, 2000, the trial court granted a preliminary injunction requiring CFFSR to comply with the ordinance. CFFSR admitted that it had not been complying with the SMC adult cabaret ordinance before that injunction was granted.

The trial court granted the City's motion for summary judgment. In that order, it declared that the SMC adult cabaret ordinance applies to CFFSR and that it does not invade CFFSR's members' rights to privacy or freedom of association. The trial court also imposed a permanent injunction against CFFSR that required it to comply with the SMC adult cabaret ordinance. CFFSR appeals, contending that it presented genuine issues of material fact regarding the ordinance's applicability and that the ordinance is unconstitutional as applied.[3]

## STANDARD OF REVIEW

Summary judgment is appropriate if, considering all evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); *see Van Dinter v. City of Kennewick*, 121 Wn.2d 38, 47, 846 P.2d 522 (1993). When reviewing summary judgment orders, this court engages in the same inquiry as the trial court. *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998).

---

[3] CFFSR argues that application of the SMC adult cabaret ordinance to its members infringes upon their rights under the Washington constitution to view "lawful adult entertainment" in private. But CFFSR does not specify which types of "lawful adult entertainment" its members have a right to view in private or how the SMC adult cabaret ordinance infringes upon those purported rights. We therefore decline to address this issue.

## DISCUSSION

I. Applicability of the SMC adult cabaret ordinance to CFFSR

CFFSR argues that the SMC adult cabaret ordinance does not apply to it because it is a private club and the Shoreline City Council did not consider private clubs when it adopted the ordinance. In support of its argument, CFFSR relies upon statements from a Shoreline Assistant City Manager who was involved in the enactment of the ordinance and a paralegal who reviewed the ordinance's legislative record. These statements, which were made three years after the ordinance was enacted, aver that the City Council did not consider the applicability of the ordinance to private clubs.

 Appellate courts "review de novo the meaning of a statute, with the primary purpose of giving effect to legislative intent." *Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie, Fraternal Order of Eagles*, 108 Wn. App. 208, 214, 27 P.3d 1254 (2001). "Absent ambiguity, a statute's meaning must be derived from the wording of the statute itself without judicial construction or interpretation." *Fray v. Spokane County*, 134 Wn.2d 637, 649, 952 P.2d 601 (1998). Indeed, when statutory language is clear and unequivocal, courts must assume "the Legislature meant exactly what it said and apply the statute as written." *Duke v. Boyd*, 133 Wn.2d 80, 87, 942 P.2d 351 (1997). In addition, the Supreme Court has stated that courts are reluctant "to discern legislative intent from the testimony of a single legislator." *W. Telepage, Inc. v. City of Tacoma*, 140 Wn.2d 599, 611, 998 P.2d 884 (2000). In that case, the Court found a lobbyist's "noncontemporaneous understanding of legislative intent" to be of "even less utility" in discerning the Legislature's intent. *W. Telepage*, 140 Wn.2d at 611.

 The SMC defines "[a]dult [c]abaret" as "any commercial premises . . . to which any member of the public is invited or admitted and where an entertainer provides live

adult entertainment to any member of the public." SMC 5.10.010(A). A "[c]abaret" is "any room, place or space whatsoever in the city in which any music, singing, dancing, or other similar entertainment is permitted in connection with any hotel, restaurant, cafe, club, tavern, or eating place, directly selling, serving, or providing the public, with or without charge, food, drink or liquor." SMC 5.10.010(E). The SMC defines "member of the public" as "any customer, patron, club member, or person, other than an employee . . . who is invited or admitted to a cabaret." SMC 5.10-.010(M).

In light of the ordinance's express references to "club" and "club member[s]," we assume that the City Council meant exactly what it said, i.e., that any commercial premises to which any club member is invited or admitted and where an entertainer provides live adult entertainment to any club member is an adult cabaret under the ordinance. Because the ordinance is not ambiguous on its face, we decline to consider evidence of interpretation or intent. Even if we were to consider such evidence, the noncontemporaneous statements from nonlegislators relied upon by CFFSR would be unhelpful in discerning the City Council's intent. *See W. Telepage*, 140 Wn.2d at 611.

█ CFFSR—which sells memberships and nonalcoholic drinks, operates in a location that is zoned commercial, and has members who pay adult entertainers for performances—is operating a commercial premises, notwithstanding its status as a nonprofit corporation. Because the City Council did not expressly exclude private club members or nonprofit club members from the broad definition of "[m]ember of the public" in SMC 5.10.010(M), we assume it did so intentionally. *See W. Telepage*, 140 Wn.2d at 611 ("[W]here the Legislature did not expressly exclude paging services from the broad definition of network telephone services in RCW 82.04.065(4), it must be assumed the Legislature did so intentionally."). Thus, the ordinance

applies to CFFSR members in the exact same manner it applies to non-CFFSR members.[4]

## II. Freedom of Association

CFFSR contends that it presented to the trial court documents that raise a genuine issue of material fact regarding whether it is a bona fide private club entitled to an associational privacy right under the United States Constitution.

 There is a "freedom of association" right to make "choices to enter into and maintain certain intimate human relationships" under the First Amendment to the United States Constitution. *Roberts v. United States Jaycees,* 468 U.S. 609, 617-18, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984). "In this respect, freedom of association receives protection as a fundamental element of personal liberty." *Roberts,* 468 U.S. at 618. That right, however, is reserved for certain relationships worthy of this kind of constitutional protection. Those relationships "are distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship." *Roberts,* 468 U.S. at 620. Purpose, policies, and congeniality also may be relevant. The United States Supreme Court declared that "an association lacking these qualities—such as a large business enterprise—seems remote from the concerns giving rise to this constitutional protection." *Roberts,* 468 U.S. at 620.

In this case, CFFSR presented documents supporting the following facts that for the purposes of summary judgment we presume to be true. A group of citizens formed CFFSR to, inter alia, view live adult entertainment in a private venue. To become a member of CFFSR, a person must be 18 years old, submit an application to CFFSR's board, pay a $50 fee, agree to comply with certain rules, attend a

---

[4] CFFSR asserts that making it subject to the SMC adult cabaret ordinance is the same as subjecting a bachelor party at a private home to the ordinance. That argument is misplaced. CFFSR is a cabaret as defined in the SMC, while a bachelor party at a private home is not. A private home is also not a commercial premises and bachelor party attendees are not members of the public as defined by the SMC.

meeting, and be approved by CFFSR's board. Applicants were also required to sign a declaration stating that he or she provided his or her correct identity,[5] and agreeing to allow the use of their name in connection with CFFSR litigation. When CFFSR began operating, its policy was to approve an application for membership unless that person received a negative recommendation from a manager. That policy was later changed to allow members to participate in discussions regarding admissions of new members. CFFSR has more than 2,300 members, though it maintains it has not advertised or solicited new members. Once CFFSR members enter the establishment, they purchase nonalcoholic drinks and pay live adult entertainers for performances. CFFSR is a corporation that contributes to charities and does not earn a profit.

Several features of CFFSR place the organization outside of the category of relationships worthy of this kind of constitutional protection. CFFSR is not a relatively small group and does not appear to be selective in its membership. Rather, membership and activities at CFFSR closely resemble those of a business enterprise. Notwithstanding the membership requirement and the nonprofit status, CFFSR's operations are nearly identical to Hon's.[6] Indeed, CFFSR, like Hon's, features live adult entertainers from Talents West II at 16743 Aurora Avenue North. Also, patrons of CFFSR, like patrons of Hon's, purchase nonalcoholic drinks and pay entertainers for performances.

In addition, CFFSR members do not appear to be seeking to enter into and maintain certain intimate human relationships. The arguments presented by CFFSR focus on its desire to create a private venue in which its members can enjoy live adult entertainment. Although it is true that CFFSR members likely believe in its stated purpose in that

[5] CFFSR added this requirement after the King County police officers joined CFFSR to conduct surveillance.

[6] Although the parties devote much of their briefing to whether the president of Hon's is involved in the operations of CFFSR, this issue is not relevant to any of the issues presented in this case as acknowledged during oral argument before this court by the attorney representing the City.

they would prefer to conduct their activities in private, that does not distinguish them from most of the population. Even considering the record in the light most favorable to CFFSR, it appears from the documents submitted to this court that its own members are unfamiliar with its additional stated political and charitable purposes. Rather, these people joined CFFSR to enjoy live adult entertainment.[7]

We therefore conclude that CFFSR members are not entitled to constitutionally-protected "freedom of association" rights to make "choices to enter into and maintain certain intimate human relationships."

III. Right to Associate for Expressive Purposes

CFFSR contends that "covert surveillance by the police . . . and the requirement that the Club admit into membership undercover police officers who lie about their identity are completely inconsistent with the purposes and philosophy of the Club." It explains that the City's enforcement techniques have caused CFFSR members to "constantly fear that they will be arrested, or the Club closed, through the uncorroborated testimony of a single police officer." For these reasons, it maintains that the SMC adult cabaret ordinance as applied violates its constitutionally-protected right to associate.

 There exists a "right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion. The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties." *Roberts*, 468 U.S. at 618. The United States Supreme Court has "long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, reli-

---

[7] The result would not change even if the record indicated that the political and charitable activities were the dominant activities and the live entertainment was a minor activity.

gious, and cultural ends." *Roberts*, 468 U.S. at 622. The right to political association " 'is at the core of the First Amendment, and even practices that only potentially threaten political association are highly suspect.' " *Lerman v. Bd. of Elections*, 232 F.3d 135, 146-47 (2d Cir. 2000) (quoting *Krislov v. Rednour*, 226 F.3d 851 (7th Cir. 2000)).

 "The right to associate for expressive purposes is not, however, absolute. Infringements on that right may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Roberts*, 468 U.S. at 623. Indeed, "any inference that criminal investigation is somehow prohibited when it interferes with such First Amendment interests" is unfounded. *United States v. Rubio*, 727 F.2d 786, 791 (9th Cir. 1983) (discussing the legality of a criminal investigation to determine membership in Hell's Angels Motorcycle Club). For example, association with an enterprise is an element of a Racketeer Influenced and Corrupt Organizations Act (RICO) offense. 18 U.S.C. § 1962(c); *United States v. Turkette*, 452 U.S. 576, 583, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981).

The crux of CFFSR's argument is that the City prevented it from choosing its own members. Relying primarily on *Boy Scouts of America v. Dale*, 530 U.S. 640, 120 S. Ct. 2446, 147 L. Ed. 2d 554 (2000), CFFSR asserts that it has the right to choose its members. In that case, the United States Supreme Court stated: "The forced inclusion of an unwanted person in a group infringes the group's freedom of expressive association if the presence of that person affects in a significant way the group's ability to advocate public or private viewpoints." *Boy Scouts*, 530 U.S. at 648. But nothing was presented or argued in this case to support CFFSR's bald assertion that the City *required* CFFSR to admit police officers into its membership. Rather, the record indicates that CFFSR did so on its own following procedures and standards it created. Although the officers did not reveal their identities as police officers, CFFSR was

nonetheless free to refuse them. Indeed, the adult cabaret ordinance does not preclude CFFSR from revoking membership to anyone, including undercover police officers, once the misrepresentation of identity becomes known. The holding in *Boy Scouts* is therefore inapplicable to this case. While surveillance by the police may be inconsistent with CFFSR's philosophy, we reject the notion that police surveillance is somehow prohibited for this reason. *See Rubio*, 727 F.2d at 791.

Moreover, even if CFFSR members had a right to associate for expressive purposes, CFFSR does not explain how the SMC adult cabaret ordinance would violate that right. The ordinance does not aim at the suppression of speech, does not distinguish between prohibited and permitted activity on the basis of viewpoint, and does not license enforcement authorities to administer the statute on the basis of such constitutionally impermissible criteria. *See Roberts*, 468 U.S. at 623. CFFSR's arguments that the SMC adult cabaret ordinance as applied violates its members' rights to associate must therefore fail.

CFFSR's members' fears that they will be arrested or the Club closed appear to be caused by the uncertainty regarding whether the restrictions set forth in the SMC adult cabaret ordinance applied to the live adult entertainment inside CFFSR. Now, it should be clear to CFFSR members that its live adult entertainment must comply with the ordinance. As long as the members and entertainers at CFFSR are complying with the law, including the restrictions set forth in the ordinance, they have no reason to fear that their association with other club members will be interfered with or that they will be arrested or the club closed. The SMC adult cabaret ordinance applies in the same manner to CFFSR members as it does to anyone else.

Considering all evidence and reasonable inferences therefrom in the light most favorable to CFFSR, we conclude that the trial court properly granted summary judgment and issued a permanent injunction requiring CFFSR to comply with the SMC.

## IV. Attorney Fees

CFFSR argues that it is entitled to an award of attorney fees and costs on appeal under 42 U.S.C. § 1988 (1995). That statute allows a court to award reasonable fees and costs to the prevailing party. Because CFFSR is not the prevailing party, it is not entitled to attorney fees or costs on appeal.

Affirmed.

AGID, C.J., and BAKER, J., concur.