IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JUANITA COUNTRY CLUB CONDOMINIUM OWNERS ASSOCIATION, a Washington non-profit corporation, | ) ) ) ) ) | No. 77569-3-I<br><br>DIVISION ONE |
| Appellant, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| PHILLIPS REAL ESTATE SERVICES, L.L.C., a Washington limited liability corporation, | ) ) ) ) ) | |
| Respondent. | ) | FILED: March 4, 2019 |

SCHINDLER, J. — In 2012, Juanita Country Club Condominium Owners Association (Association) entered into a management agreement with Phillips Real Estate Services LLC (Phillips). In 2016, the Association filed a lawsuit against Phillips alleging breach of contract. The court granted Phillips' motion for summary judgment and dismissed the claims against Phillips. Because the parties modified the standard of care in the management agreement in writing and there are material issues of fact whether Phillips breached the reasonable care standard, we reverse summary judgment dismissal of the claims against Phillips, vacate the award of attorney fees, and remand.

## FACTS

In June 2012, Juanita Country Club Condominium Owners Association (Association) entered into a "Management Agreement" with Phillips Real Estate Services LLC (Phillips). The agreement gives Phillips the authority and duty to "supervise the management and maintenance" of the Association.

The Management Agreement defines Phillips as the "Agent." Section 2 of the agreement describes the "DUTIES OF AGENT." Section 2.1, "Management Duties," states Phillips will "[m]aintain businesslike relations with members and respond in systematic fashion to requests for services from the" Association board of directors (Board); "[o]versee modernization, rehabilitation, and major construction projects"; and "[p]repare special reports in accordance with requests by the Board." Section 2.2 states Phillips is responsible for "Fiscal and Accounting," specifically:

a. Preparation of an annual budget at least 60 days prior to the end of the fiscal accounting year, subject to final approval by the Board.

b. Receipt and posting of individual Association member dues to individual account records.

c. Collection of assessments as provided in the Declaration and follow upon all delinquencies to effectuate collection of all amounts owed.

d. Preparation and mailing of delinquency notice(s) as directed by the Board.

e. Timely preparation of payroll checks and accurate record keeping of payroll time sheets for Association personnel.

f. Make payment on invoices, utility bills and other common expenses as approved by the Board and consistent with section 2.1.

g. Monthly preparation and distribution of Statement of Cash Receipts and Disbursements as directed by the Board.

h. Preparation and distribution of annual financial reports as directed by the Board.

i. Preparation of correspondence and reports regarding finances as requested by the Board.

j. Assist in performance of audits in cooperation with auditors appointed by the Association.

Section 2.5 states Phillips shall "[m]aintain all financial records of the Association and its members" and "[m]aintain complete files for all major repairs and expenditures made to common areas."

In early 2013, the Association obtained a construction loan to repair the roof of the condominiums. The Association planned to repay the loan with a "special assessment" against each condominium owner. The Board resolution for the special assessment states, "In the event of a surplus in special assessment payments collected, whether due to Project cost savings, high collection rates, or any other reason, those funds shall be committed to the Association's reserve accounts."

The Board agreed condominium owners could pay the assessment with monthly payments for 15 years and had the option to pay the assessment early. The monthly payments included principal and interest. The interest rate on the installment payments was the same as the interest rate on the construction loan. Because the loan required interest-only payments for the first year, those payments were not applied toward principal in the first year. Some condominium owners exercised the option to pay the special assessment early. As a result, the Association initially collected more than it was required to pay on the loan.

On September 23, 2013, Association Board president Frank Sloan sent an e-mail to Phillips president Timothy Pfohl and manager Terry Hughes about a "number of issues." The e-mail states that "it appears that items are being forgotten and or not being followed through on" and identifies "Monthly Financials not being posted for

HOA,"[1] "Loan monthly accounting," and "Penalties, Rental accounting and letters to offenders." Hughes responded to the e-mail the next day on September 24:

> You have not received your August financials yet as they were incorrect. I have our financial lead correcting them now and will have them to you as soon as I can.
>
> The warning letters all went out when directed and there has been some response from them. I have not received any updates on them. I am working on the rental list (I sent you my most recent copies) and getting all the leases, etc. That is taking some time, but I am getting some response from those investor owners.

On October 31, Phillips finance director William Holguin sent an e-mail to Sloan about the need to correct the accounts for dues and the special assessment:

> I wanted to provide you an update on status of the adjustments and review. We have been working diligently on the Juanita Country Club financial information and making a tremendous amount of progress. Tomorrow, I will be able to forward you a report outlining up to date history on the special assessment accounts and regular dues accounts. We do have one owner's ledger that may need to be adjusted, but everything else has been carefully reviewed. All items that sho[we]d up in the regular ledger that should have been in the Special Assessment ledger have been moved to their correct spot. You should be receiving an email from [Hughes] or me sometime tomorrow containing an update of all the tenant ledgers balances.

On November 5, Sloan sent an e-mail to Hughes, Pfohl, and Holguin pointing out accounting errors:

> [Y]our numbers are not correct...I don't about [sic] anyone else but our unit I-102 accounting states we have paid no monies toward the roof?....I want a letter to each owner regarding their unit and the current accounting you have and allow them to audit their account both the DUES and SPECIAL ASSESSMENT.
>
> If my accounting via the email from [Holguin] is supposed to be update[d] and correct.....then there are issues. I have spen[t] the weekend retrieving all payments to the HOA is B[ank] of A[merica]....and both my dues which should be reduced is at ($176) monthly....wrong.....but I will check with the

---

[1] Homeowner association.

others and see what their reduction is currently at......Special Assessment ($76) monthly?.....we will pay [$]4k this month...and reduce that amount....

This is just my account [I] am afraid to hear from others.[2]

On November 19, Sloan sent an e-mail to Pfohl concerning Hughes' "lack of accounting knowledge" and problems with "co-mingling the Dues and Assessment." Pfohl responded:

On the accounting dep[artmen]t — I saw the shortcomings and made a key hire about 6 months ago — Mary Jo Bennett. Knows condo[3] bookkeeping in and out. . . . She is oversight of all our condo bookkeepers now so will see vast improvement there. That's a promise.

Very disappointed on the accounting items. Accounting has to be one of the foundations upon which we build our relationships and reputation. No ifs, ands, or buts about it. There has been and will continue to be vast improvement. I guarantee it.

On November 28, 2014, Sloan sent a letter to Pfohl about the "continuous accounting issues regarding our Monthly Dues/Assessment Loan" and the intent to terminate the Management Agreement with Phillips. But after assurances from Pfohl, Sloan agreed to "try to work it out." After the Board meeting on July 27, 2015, Phillips decided to terminate the Management Agreement with the Association effective September 1, 2015.

The Association retained accountant Andrew McAlister and Emerald City Management & Consulting LLC to reconcile the "many discrepancies" in the accounting.

In 2016, the bank rejected the Association's application for a loan "because of the state of the accounting." The Association hired consultant and loan broker Rebekah Baze to manage the accounting and help obtain the loan.

---

[2] Ellipses in original.
[3] Condominium.

5

On May 12, 2016, the Association filed a lawsuit against Phillips. The complaint alleged (1) breach of contract, (2) breach of fiduciary duty, and (3) breach of implied duty of good faith and fair dealing. The Association alleged Phillips breached the Management Agreement by failing to properly manage the special assessments, conduct audits, manage rental restrictions, record an amended declaration, and charging the Association for services it did not perform.

Phillips propounded interrogatories, asking the Association to "[i]temize the damages claimed by you against defendant in this litigation, and describe how you calculated each category of damages." In answer to the interrogatory, the Association identified (1) the failure of Hughes "to pass along increase in loan adjustable rate to owners" and "to transfer approximately $150,000[.00] in funds from Mutual of Omaha Bank to Alliance Bank," (2) the failure of Phillips "to conduct audits for 2013 and 2014 and to timely forward to accountant 2010-12 audits," (3) the failure of Hughes and property manager Vickie Tolson to "manage rental restrictions" and identify delinquent renters, and (4) the failure of Tolson to record the amended declaration for approximately two to three months. The Association claimed $32,092.50 in damages plus attorney fees.

The case was transferred to mandatory arbitration on February 7, 2017. The arbitrator filed an award on June 16, 2017. On June 22, the Association filed a request for a trial de novo, a jury demand, and a request to seal the award. The superior court sealed the award and issued the case schedule order on June 26.

The Association filed supplemental interrogatory responses claiming additional damages of $34,897.50 for a total of $66,990.00 plus attorney fees.

6

The Association filed a motion for partial summary judgment on the standard of care under the terms of the Management Agreement. The Association argued section 10 of the Management Agreement that limits the responsibility of Phillips to willful misconduct and gross negligence violated the law that regulates the actions of real estate agents and brokers, chapter 18.86 RCW.

Phillips filed a motion for summary judgment dismissal of the lawsuit. Phillips argued the provision of the agreement that limits its responsibility to willful misconduct and gross negligence did not violate chapter 18.86 RCW and the evidence did not support the breach of that duty.

The court denied the Association's motion for partial summary judgment. The court ruled the willful misconduct and gross negligence standard in the Management Agreement did not violate chapter 18.86 RCW. The court dismissed the claims for failure to record the amended declaration and "failure to manage rentals" but did not dismiss the accounting claims. The order states:

> (1) Section 10 of the Management Agreement is enforceable and plaintiff will be required to prove gross negligence or willful misconduct at trial;
> (2) Plaintiff[']s claims for failure to record, and failure to manage rentals are dismissed;
> (3) Only plaintiff[']s accounting failure claims remain.

On reconsideration, the court concluded the Association did not present evidence to show willful misconduct or gross negligence to support the accounting claims. The court entered an order dismissing the lawsuit. The court awarded Phillips attorney fees and costs in the amount of $79,837 plus interest.

ANALYSIS

Chapter 18.86 RCW

The Association contends the court erred by concluding section 10 of the Management Agreement did not violate chapter 18.86 RCW. Section 10 limits Phillips' duty under the Management Agreement to "willful misconduct or gross negligence."

The Association asserts section 10 violates RCW 18.86.030(1). RCW 18.86.030(1)(a) states an agent who "renders real estate brokerage services" cannot waive the duty to exercise reasonable care. Phillips contends the statutory duty of reasonable care under RCW 18.86.030(1)(a) does not apply to "common interest community managers" that provide only management and financial services under chapter 18.85 RCW.

"Statutory interpretation is a question of law reviewed de novo." Williams v. Tilaye, 174 Wn.2d 57, 61, 272 P.3d 235 (2012). We look first to the text of a statute to determine its meaning. Griffin v. Thurston County Bd. of Health, 165 Wn.2d 50, 55, 196 P.3d 141 (2008). If a statute is plain and unambiguous, the meaning of the statute must be determined from the wording of the statute itself. W. Telepage, Inc. v. City of Tacoma Dep't of Fin., 140 Wn.2d 599, 608-09, 998 P.2d 884 (2000). Statutes are read together to achieve a harmonious statutory scheme that maintains the integrity of the respective statutes. Employco Pers. Servs., Inc. v. City of Seattle, 117 Wn.2d 606, 614, 817 P.2d 1373 (1991).

Chapter 18.85 RCW and chapter 18.86 RCW regulate and govern the activities of real estate agents and brokers. Under RCW 18.86.030(1)(a), the duty to use "reasonable skill and care" applies only to a broker or agent who renders "real estate

8

brokerage services under chapter 18.85 RCW." RCW 18.86.010(11) defines "real estate brokerage services" as "the rendering of services for which a real estate license is required." RCW 18.85.151(12) exempts "[c]ommon interest community managers who . . . provide management or financial services" from obtaining a broker's license "if they do not promote the purchase, listing, sale, exchange, optioning, leasing, or renting of a specific real property interest."

Because the Management Agreement and the record establishes Phillips was acting as a common interest community manager for the Association, not as a provider of real estate brokerage services, section 10 of the Management Agreement does not violate RCW 18.86.030(1).

Written Modification of the Management Agreement

In the alternative, the Association contends the parties modified the terms of the Management Agreement in writing to adopt reasonable care and not willful misconduct or gross negligence.

Contract interpretation is a question of law we review de novo. Dave Johnson Ins., Inc. v. Wright, 167 Wn. App. 758, 769, 275 P.3d 339 (2012). Washington courts follow the objective manifestation theory of contracts. Berg v. Hudesman, 115 Wn.2d 657, 663, 801 P.2d 222 (1990); Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005). "[W]e attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." Hearst, 154 Wn.2d at 503. We "impute an intention corresponding to the reasonable meaning of the words used." Hearst, 154 Wn.2d at 503. We give words in a contract their ordinary and usual meaning "unless

9

the entirety of the agreement clearly demonstrates a contrary intent." Hearst, 154 Wn.2d at 504. "Interpretations giving lawful effect to all the provisions in a contract are favored over those that render some of the language meaningless or ineffective." Grey v. Leach, 158 Wn. App. 837, 850, 244 P.3d 970 (2010).

The plain and unambiguous language of section 9 of the Management Agreement, "AGREEMENT TO BE CHANGED IN WRITING ONLY," states, "This Agreement shall constitute the entire Agreement between the contracting parties, and no variance or modification thereof shall be valid and enforceable, except by an agreement in writing."[4]

Section 8, "REAL ESTATE AGENCY LAW," states, "Association acknowledges the receipt from Agent of a pamphlet on the law of real estate agency as required by RCW 18.86.030(1)." A Phillips representative and an Association representative inserted the following handwritten language, "Honesty, Good Faith, Reasonable Care, Material Facts."

Section 10, "RESPONSIBILITY," states:

Agent shall be responsible for willful misconduct or gross negligence but shall not be held responsible for any matters relating to error of judgment, or for any mistakes of fact or law, or for anything, which it may do or refrain from doing which does not include any willful misconduct or gross negligence. Agent shall not be responsible for acts or omissions of independent contractors engaged by Agent on behalf of the Association.

The Management Agreement establishes the parties modified the terms of the agreement in writing. Both parties initialed and acknowledged the handwritten change

---

[4] Emphasis added.

to the standard of care.

8.0 REAL ESTATE AGENCY LAW
Association acknowledges the receipt from Agent of a pamphlet on the law of real estate agency as required by RCW 18.86.030(1).
*Honestly Good Faith, Reasonable Care, Material Facts*

9.0 AGREEMENT TO BE CHANGED IN WRITING ONLY
This Agreement shall constitute the entire Agreement between the contracting parties, and no variance or modification thereof shall be valid and enforceable, except by an agreement in writing.

10.0 RESPONSIBILITY
Agent shall be responsible for willful misconduct or gross negligence but shall not be held responsible for any matters relating to error of judgment, or for any mistakes of fact or law, or for anything, which it may do or refrain from doing which does not include any willful misconduct or gross negligence. Agent shall not be responsible for the acts or omissions of independent contractors engaged by Agent on behalf of the Association.

Because the handwritten modification prevails over the conflicting printed willful misconduct or gross negligence provision in section 10, the handwritten reasonable care standard controls. Green River Valley Found., Inc. v. Foster, 78 Wn.2d 245, 249, 473 P.2d 844 (1970).

Summary Judgment Dismissal of Claims

The Association contends the court erred by dismissing its breach of contract claims for failure to present evidence of gross negligence or willful misconduct. Philips contends that even if a reasonable care standard applies, the Association did not present evidence to establish breach or damages to support its claims.

We review summary judgment de novo, engaging in the same inquiry as the trial court. Kruse v. Hemp, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993). Summary judgment is appropriate if the pleadings, depositions, and affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Degel v. Majestic Mobile Manor, Inc., 129 Wn.2d 43, 48, 914 P.2d 728 (1996).

The defendant on summary judgment has the burden of showing the absence of evidence to support the plaintiff's case. Young v. Key Pharm., Inc., 112 Wn.2d 216,

225, 770 P.2d 182 (1989). If the moving party shows an absence of a genuine issue of material fact, the burden shifts to the nonmoving party. Young, 112 Wn.2d at 225.

Only when reasonable minds could reach but one conclusion on the evidence should the court grant summary judgment. Smith v. Safeco Ins. Co., 150 Wn.2d 478, 485, 78 P.3d 1274 (2003). In conducting this inquiry, the court must view all facts and reasonable inferences in the light most favorable to the nonmoving party. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Where different competing inferences may be drawn from the evidence, the issue must be resolved by the trier of fact. Hudesman v. Foley, 73 Wn.2d 880, 889, 441 P.2d 532 (1968); Kuyper v. Dep't of Wildlife, 79 Wn. App. 732, 739, 904 P.2d 793 (1995).

The Association contends material issues of fact preclude summary judgment dismissal of its claim that Phillips breached a reasonable care standard in providing fiscal and accounting services.

Section 2.2 of the Management Agreement addresses the "[f]iscal and accounting services" Phillips is responsible for providing. The fiscal and accounting services include "[r]eceipt and posting of individual Association member dues to individual account records" and "[c]ollection of assessments."

Viewing the evidence in the light most favorable to the Association, there are material issues of fact as to whether Phillips breached the standard of reasonable care in performing fiscal and accounting duties. In September 2013, Phillips reported to the Association, "You have not received your August financials yet as they were incorrect." On October 31, Phillips assured the Association, "All items that sho[we]d up in the regular ledger that should have been in the Special Assessment ledger have been

12

moved to their correct spot." On November 5, the Association informed Phillips, "[Y]our numbers are not correct. . . . I want a letter to each owner regarding their unit and the current accounting you have and allow them to audit their account both the DUES and SPECIAL ASSESSMENT." On November 19, Phillips admitted there were continuing "shortcomings" in its accounting, stating, "Very disappointed on the accounting items. Accounting has to be one of the foundations upon which we build our relationships and reputation. No ifs, ands, or buts about it. There has been and will continue to be vast improvement." The Association also presented evidence that it was unable to obtain a loan from its lender "because of the state of the accounting" and could obtain the loan only after hiring consultant and loan broker Rebekah Baze.

The Association contends there are genuine issues of material fact as to whether Phillips breached the Management Agreement by failing to collect delinquent fees and manage rental restrictions. Phillips argues it had no duty to collect delinquent fees or manage rental restrictions. The Management Agreement does not support Phillips' argument. The Management Agreement defines Phillips' duties broadly. The agreement states Phillips has the duty to "follow up on all delinquencies to effectuate collection of all amounts owed."

Viewing the evidence in the light most favorable to the Association, the record shows manager Hughes assured the Association she was addressing past-due amounts owed. In a September 24, 2013 e-mail, Hughes states the "warning letters all went out when directed" and she was "working on the rental list." On November 5, Sloan sent an e-mail asking Hughes, "Did you send out [t]he letter regarding renting this unit?....I have not seen it and as I stated many times...please contact the owner of I 105

13

and let him know he owes [$]500 move in fee."[5] We conclude there are material issues of fact as to whether Phillips breached the standard of reasonable care in failing to facilitate and manage delinquent fees.

The Association contends there are material issues of fact as to whether Phillips breached the standard of reasonable care by delaying the approval and filing of the amended declaration. Phillips argues the Association did not present any evidence of delay or damages.

Viewing the evidence in the light most favorable to the Association, there are material issues of fact related to the delay between December 2014 and May 2015 and whether the delay was the proximate cause of the Association's damages. In December 2014, the Association decided to amend the declaration to make an owner responsible for water damage to the condominium unit. The Association attorney drafted and e-mailed the final documents for the amended declaration to property manager Tolson with instructions to begin the owner approval process by early December. The e-mail provides directions on providing notice to each condominium owner and states the documents "are designed to allow owners to consent by mail, without a meeting." Tolson did not record the amended declaration until late May. The undisputed record shows Phillips did not record the amended declaration until May 29, 2015. In the interim, there was water damage to a condominium unit in April. An April 15 e-mail states that because the amended declaration "is not recorded yet," the Association is liable for the repairs.

---

[5] Ellipses in original.

14

We reverse summary judgment dismissal of the lawsuit against Phillips, vacate the award of attorney fees, and remand.

WE CONCUR: